UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:07-cr-342-T-23MAP

YOUSSEF SAMIR MEGAHED

_____/

### DEFENDANT'S MOTION TO SUPPRESS ANY AND ALL PHYSICAL EVIDENCE AND/OR STATEMENTS AND INCORPORATED MEMORANDUM OF LAW AND REQUEST FOR AN EVIDENTIARY HEARING

**COMES NOW**, YOUSSEF MEGAHED, by and through his undersigned

counsel, James W. Smith III, pursuant to the Fourth Amendment to the United States

Constitution and Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and

moves this Court to suppress any and all evidence discovered and statements made

during the search of his automobile conducted by law enforcement on August 4,

2007.

As grounds for this motion, the following are offered:

### STATE ACTION, GROUNDS, AND STANDING

As the "pole star and guide," all governmental conduct must comport with the

United States Constitution. *See Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct.

1

574, 576 (1921);  *Lustig v. United States*, 338 U.S. 74, 69 S. Ct. 1372 (1949).  *See also, United States v. Ford*, 765 F.2d 1088, 1089-90 (11th Cir. 1985); *United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir. 1978).[1]

On August 4, 2007,  in Berkeley County, South Carolina, Berkeley County Sheriff's Office Deputy Lamar Blakely alleges that he observed a vehicle containing defendants Mr. Mohammed and Mr. Megahed speeding on Highway 176.  At the time Deputy Blakely observed the vehicle, it was being driven by defendant Mr. Mohammed.  Mr. Megahed was seated in the passenger seat.  Deputy Blakely alleges that he stopped the vehicle solely for this reason.

Mr. Mohammed, seeing the deputy's emergency lights activated and Deputy Blakely's police vehicle directly behind him, submitted to this show of police authority and brought the vehicle to a stop along the nearby roadside.  Mr. Megahed, a passenger in the vehicle, submitted to this show of "police authority" and was not free to leave, *i.e.*, he was seized or he was in custody.  *See Florida v. Bostick*, 501 U.S. 429, 439, 111 S. Ct. 2382 (1991) and *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S. Ct. 1868, 1879 n. 16 (1968)(holding only when the officer, by means of physical

---

[1]     *See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)(providing that decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit)(citing *Bonner v. City of Prichard*, Alabama, 661 F.2nd 1206, 1207 (11th Cir. 1981)(*en banc*)).

force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred).  As a passenger in the vehicle, Mr. Megahed has the right to challenge the legality of the traffic stop and any subsequent search. *See Brendlin v. California, 127 S.Ct. 2700, 168 L.Ed.2d 132*.

A temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment]. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772-73 (1996).  Traffic stops qualify as seizures under the Fourth Amendment.  *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391 (1979).

Due to this seizure of him by Deputy Blakely, Mr. Megahed's Fourth Amendment right to be free from unreasonable searches and seizures was triggered. *See Whren, Terry, and Bostick, supra*.  As a result, Mr. Megahed has standing to contest the legality of this seizure and subsequent search.  *See Rekas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 425-30 (1978)(holding the rights assured by the Fourth Amendment are personal rights, [which]…may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure)(citing *Simmons v. United States*, 390 U.S. 377, 389 (1968)).  *See Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512  (1967)(holding the Fourth

3

Amendment protects people—and not simply areas—against unreasonable searches and seizures….).

## FACTS OF THE CASE

After both vehicles stopped, Deputy Blakely approached the defendants' vehicle and obtained Mr. Mohammed's driver's license and the vehicle registration. When he returned to his vehicle, Deputy Blakely provided the license and registration information via radio to a dispatcher at the Berkeley County Sheriff's Department. While waiting for a response, Deputy Blakely engaged in an inappropriate conversation with his partner that included the making of several derogatory comments concerning the religion, ethnicity, and nationality of Mr. Mohammed and Mr. Megahed. All of these comments are captured on the patrol vehicle's videotape of the stop. Examples of these comments include, but are not limited to, Deputy Blakely and his partner referring to Mr. Mohammed and Mr. Megahed as "graduates of suicide bomber school" and members of the "Taliban". Deputy Blakely also inappropriately joked that both Mr. Mohammed and Mr. Megahed were in possession of copies of The Koran.[2]

After learning from police dispatcher that Mr. Mohammed's license and car

---

[2] Shockingly, on the video, Deputy Blakely even expresses concern over the fact that his ethically-inappropriate remarks were being recorded by his in-vehicle video recorder.

registration was valid, and despite the lack of any unlawful or suspicious conduct by Mr. Mohammed or Mr. Megahed, Deputy Blakely stated to his partner that was going to search the car.

Deputy Blakely and his partner exited their vehicle, approached the defendants' car, and ordered Mr. Mohammed to exit the vehicle.  Without reasonable suspicion of unlawful conduct and aware that Mr. Mohammed and Mr. Megahed's information had come back clear from dispatch, Deputy Blakely then asked Mr. Mohammed to explain why he was in the area and to provide a detailed explanation of his travel plans.

Mr. Mohammed explained to Deputy Blakely that he and Mr. Megahed were driving from Tampa, Florida, to North Carolina and were visiting various beaches along the route.  Despite this benign explanation, for some unknown reason Deputy Blakely was unsatisfied with this response and continued to question Mr. Mohammed, in a very aggressive and detailed manner, concerning the details of the trip.  A viewing of the videotape makes it clear that nothing in the responses given by Mr. Mohammed or Mr. Megahed would lead a reasonable law enforcement officer to conclude that any illegal activity was taking place.

Despite having evidence that Mr. Mohammed  driver's license was valid, the registration for the vehicle was valid and that there were no outstanding warrants for

the arrest of Mr. Mohammed or Mr. Megahed,  Deputy Blakely ordered Mr. Mohammed to remain outside of the vehicle.  He then approached the vehicle and proceeded to question Mr. Megahed about the details of the trip.  Mr. Megahed continued to submit to this show of police authority and, therefore, was still in custody and not free to leave.  During the entire detention and non-Mirandized questioning, Deputy Blakely retained Mr. Mohammed's driver's license, preventing him from leaving the area.

Deputy Blakely questioned Mr. Megahed and once again refused to accept what were clear and concise responses concerning the trip.  Deputy Blakely then returned to Mr. Mohammed and told him that he was still not satisfied with the explanation concerning their travel plans.  He quickly asked Mr. Mohammed, "You don't mind if I search the vehicle do you?"  After Mr. Mohammed acquiesced to Deputy Blakely's show of authority, Deputy Blakely ordered Mr. Megahed out of the vehicle and proceeded to search its contents.  While searching the interior of the vehicle, Deputy Blakely found a box of ammunition.  At that point, both Mr. Megahed and Mr. Mohammed were placed in handcuffs and further questioned.  A subsequent search of the trunk of the vehicle resulted in the discovery of evidence the government intends to use at trial.  It is this evidence the defendant, Mr. Megahed, asserts has been seized in violation of the Fourth and Fifth Amendments and should

6

be suppressed.

## LEGAL ARGUMENT

The evidence outlined above must be suppressed on Fourth and Fifth Amendment grounds for the following reasons:

**1.    Deputy Blakely Lacked Probable Cause to Stop the Vehicle and Detain its Occupants**

Deputy Blakely's activation of his police vehicle's emergency lights, communicating to Mr. Mohammed and Mr. Megahed to immediately stop his vehicle, and Deputy Blakely's dress in a law enforcement uniform was a show of authority to which they submitted. *See Bostick, Terry,* and *Whren, supra.*

Mr. Mohammed's stopping of the vehicle was a submission to Deputy Blakely's show of authority, was a seizure and there is no evidence that it was based upon probable cause. *See United States v. Jimenez,* 780 F.2d 975, 978 (11th Cir. 1986)(holding that probable cause exists where "the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed.")  Mr. Megahed also asserts that Deputy Blakely lacked reasonable suspicion to stop the vehicle. *See Terry v. United States, 392,* U.S. at 1 (1968).

7

In the context of the instant case—an alleged traffic infraction for speeding—Deputy Blakely needed probable cause, as defined in *Whren*, to seize the vehicle in which Mr. Megahed was a passenger.  *See Whren*, 517 U.S. at 810 (holding, as a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred). *Accord, United States v. Griffin*, 109 F.3d 706, 707-08 (11th Cir. 1997).  In the instant case, the vehicle driven by Mr. Mohammed was not speeding and, thus, Deputy Blakely lacked probable cause or reasonable suspicion to stop the vehicle.  Therefore, all evidence seized following the unlawful stop and seizure must be suppressed as the fruit of the poisonous tree.

    **2.**    **The Length of the Detention of the Vehicle and its Occupants Violated the Defendants' Right to Be Free from Unreasonable Seizures.**

Assuming an argument that there was probable cause or reasonable suspicion to stop the vehicle, Deputy Blakely was only allowed to detain the vehicle and its occupants for the period of time necessary to investigate the charge of speeding and write a traffic citation.  Deputy Blakely violated Mr. Megahed's and Mr. Mohammed's Fourth Amendment rights when he unlawfully continued to detain them any longer than necessary to complete the traffic investigation.  Once Deputy Blakely discovered that all the driving licenses and documents were valid and that there were

no arrest warrants for any occupants of the vehicle, he should have promptly written a traffic citation and allowed Mr. Mohammed and Mr. Megahed to continue on their way. *See United States v. Pruitt*, 174 F.3d 1215, 1221 (11th Cir. 1999)(finding that once such brief [traffic] questioning was completed, the defendants should have been free to go, as the officer was provided at that time with no reasonable suspicion of their criminal activity; additional "fishing expedition" questions ... are simply irrelevant, and constitute a violation of *Terry*). In the present case, the collective facts possessed by Deputy Blakely did not constitute reasonable suspicion or justify the continued detention of Mr. Mohammed and Mr. Megahed and, as such, the seizure of their persons and subsequent search was unlawful.

Under *Terry v. Ohio*, an officer's investigation of a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *See United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003)(citing *Terry*, 392 U.S. 1, 20 88 S.Ct. 1868, 1879). In addition, the traffic stop must be of a limited duration. *Boyce*, 351 F.3d at 1106. The stop "may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." *Boyce*, 351 F.3d at 1106 (citing *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)).

Here, Deputy Blakely's continued detention of Mr. Mohammed and Mr.

9

Megahed after he completed his investigation of the alleged traffic offense amounted to an illegal seizure.  The questions concerning the travel plans of the occupants of the vehicle were not reasonably related to the scope of the initial investigation, *i.e.*, the stop of the vehicle for speeding.

Deputy Blakely's continued detention of Mr. Megahed was illegal because he had all the information necessary to issue a traffic citation.  Rather than issuing a traffic citation, Deputy Blakely elected to continue to detain the vehicle and its occupants and pose repetitive unnecessary questions concerning their travel plans, conduct which has been found to be specifically unlawful by the Eleventh Circuit in *Pruitt*.

Deputy Blakely's decision to continue to detain the vehicle and its occupants violated the law that "the stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *Boyce*, 351 F.3d at 1106 (citing *Purcell*, 236 F.3d at 1277).

In the present case, collective facts possessed by Deputy Blakely did not provide a basis, or "articulable suspicion of other illegal activity," to justify the continued unlawful detention of Mr. Mohammed and Mr. Megahed.  Once again, the only collective facts Deputy Blakely had at this time were that Mr. Mohammed and Mr. Megahed were traveling from Florida to North Carolina to visit beaches and that

they had a valid driver's licenses, vehicle registration, and no active warrants. These collective facts did not establish reasonable suspicion to justify Deputy Blakely's continued detention of the vehicle and its occupants.

Instead, these collective facts only gave rise to a "hunch" by Deputy Blakely that the vehicle and it's occupants might be involved in criminal activity.[3] In the context of the Fourth Amendment, the law is clear regarding law enforcement officers operating on a hunch: "an inchoate and unparticularized suspicion, or hunch, of criminal activity is not enough to satisfy the minimum level of objectivity [reasonable suspicion] required. *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003)(citing *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673 and *Terry*, 392 U.S. at 27, 88 S. Ct. 1868)).

Applying the reasonable suspicion standard to this case establishes that Deputy Blakely did not have a basis to continue to detain the vehicle and its occupants. The best evidence the Government can offer in support of a claim for reasonable suspicion is that Deputy Blakely had received stories, after questioning Mr. Megahed and Mr. Mohammed, that contained, at best, minor and insignificant inconsistencies.

Mr. Megahed submits that this did not constitute "articulable suspicion" of

---

[3]     A "hunch" that appears to be based on nothing more than Deputy Blakely's inappropriate stereotypes and comments regarding individuals with Middle Eastern descent and accents.

other illegal activity to justify his and Mr. Mohammed's continued detention.  *See, e.g., Boyce*, 351 F.3d at 1107-08 (rejecting the district court's finding of reasonable suspicion based upon such factors as drug dealers use the Interstate 95 corridor and frequently drive rented cars as Boyce was doing, that Boyce was unusually talkative and nervous, that Boyce's story about driving from New Jersey to Florida to see an ex-girlfriend seemed suspicious, that Boyce's rental agreement was inconsistent with his stated travel plans, and that Boyce was sweating profusely and that he continued to sweat and act nervously after learning that he would only receive a warning citation).  "[Boyce's] plan to return the car late, combined with the fact that [he] was driving a rental car on a widely used interstate that also happens to be a known drug corridor, does not create a reasonable suspicion in this case."  *Boyce*, 351 F.3d at 1109.  "These factors would likely apply to a considerable number of those traveling for perfectly legitimate purposes and do not reasonably provide suspicion of criminal activity."  *Id.* (citing *United States v. Smith*, 799 F.2d 704, 707 (11th Cir. 1986)).  *See also, United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003)(affirming the grant of defendants' motion to suppress and rejecting the Government's arguments as a basis for reasonable suspicion Perkins' nervousness; the "odd behavior" of Perkins in repeating the questions [the officer] asked him; Perkins' possession of a Florida's driver's license while claiming to live in Montgomery, Alabama; and the

"inconsistent" statements from Perkins and co-defendant Scott with regard to whom they were going to see in Greenville, Alabama).

In fact, in this case no facts were present that would have provided a basis for reasonable suspicion to justify the continued detention of the vehicle, Mr. Mohammed and Mr. Megahed. *See, e.g., United States v. Hunter,* 291 F.3d 1302, 1306 (11th Cir. 2002)(finding reasonable suspicion as Hunter was in a high crime area, known for drug and firearm arrests; Hunter was standing over and observing unlawful gambling; when Hunter saw the police approach, he began to walk quickly away; and as Hunter began to walk away, the officer saw a bulge in his waistband); *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003)(finding reasonable suspicion as Franklin was in a problem area, at night, underneath a no loitering sign, and his flight from officers); *United States v. Gordon*, 231 F.3d 750, 756 (11th Cir. 2000)(finding reasonable suspicion as Gordon and his co-defendants were sighted standing, at night, within ten feet of a parked car, surrounded by largely abandoned buildings, in an area notorious for violent crime and drug trafficking, ... <u>and</u> Gordon's flight)(emphasis added).

### 3. The Actions of Deputy Blakely Are a Clear Case of Racial Profiling.

Once this Court <u>adds</u> to its Fourth Amendment analysis the above facts and the

13

fact that the occupants of the vehicle are clearly people of color with noticeable Middle Eastern accents, it becomes clear that Deputy Blakely unlawfully "racially profiled" the occupants of the vehicle by continuing to detain them after he possessed all of the information needed to issue a traffic citation.

On more than one occasion on the videotape, Deputy Blakely can be heard making racially insensitive comments concerning Mr. Mohammed and Mr. Megahed. These comments include, but are not limited to, statements that Mr. Megahed and Mr. Mohammed are members of the "Taliban," are "suicide bombers" and "graduated early from suicide bomber school." These and other inappropriate, ethnically-stereotyping comments occurred prior to the search and discovery of any items in the vehicle and shockingly illustrate that Deputy Blakely's decision to search the vehicle was not based on reasonable suspicion of unlawful acts but upon nothing more than his own biased, unlawful racial profiling.

Racial profiling to perform a seizure of a person, as this Court is aware, is clearly a violation of one's Fourth Amendment right to be free from illegal seizures and searches. *See, e.g., United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983)(finding that most circuits have concluded that the use of drug courier profiles to establish reasonable suspicion should be viewed critically; drug courier profiles are inherently prejudicial because of the potential they have for including

14

innocent citizens as profiled drug couriers)(citing *United States v. Berry*, 636 F.2d 1075 (5th Cir. Unit B 1981)).

In the present case, there was no basis for Deputy Blakely to continue to detain the vehicle and its occupants after learning that the driver of the vehicle had a valid identification, the vehicle registration was valid, and the occupants had no warrants for their arrest. Here, Deputy Blakely had only the fact that Mr. Megahed and Mr. Mohammed apparently were driving and traveling in a manner unsuitable to Deputy Blakely's personal views. If freedom means anything, it means that an individual has the right to travel the highways of the United States without being subject to a traffic stop and subsequent search based on race or ethnicity.

**4.      The Search Conducted by Deputy Blakely Was Not Based on Any Valid Grant of Consent.**

Deputy Blakely's continued detention of the vehicle and its occupants took place after the conclusion of his traffic investigation. In fact, Deputy Blakely never returned the driving documents after completing his initial traffic investigation and delayed even issuing a traffic warning citation until after the search and arrest. Therefore, at this point, it cannot be said that Deputy Blakely's encounter with Mr. Mohammed and Mr. Megahed was "consensual", thereby justifying the continued detention and the discovery of the items found in the trunk of the motor vehicle. *See*

*United States v. Ramirez*, 476 F.3d 1231, 1237-39 (11th Cir. 2007)(finding search valid as the officer had returned all of Ramirez's driving documents to him and told Ramirez the traffic stop was over prior to the officer asking Ramirez was contraband in his vehicle and obtaining consent to search the vehicle; Ramirez's stop had become a consensual encounter at the time the officer asked Ramirez whether he had anything illegal in his car).  In contrast to *Ramirez*, in the present case, the driver's licenses were not returned prior to the request for consent.

As a result, the evidence discovered in the vehicle—outlined above—was void as it "grew" from the illegal continued detention and seizure.  As such, the evidence discovered by the Government was illegally obtained and represents fruit of the poisonous tree.  For the reasons outlined herein, the evidence must be suppressed. *See Pruitt*, 174 F.3d 1215, 1219 n. 3 (holding as police officers well know, evidence which constitutes the "fruit of a poisonous tree" is inadmissible to prove a criminal suspect's guilt)(citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963)).

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and

seizure. *Perkins*, 348 F.3d 965, 969 (citing *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990)).

> **5.      The Statements Elicited by Deputy Blakely Were Obtained in Violation of the Defendants' Right to Remain Silent.**

Mr. Megahed also challenges the scope of the traffic stop.  In particular, as alleged above, once Deputy Blakely conducted his records check and had all the information he needed to issue a traffic citation, the traffic investigation was over and the vehicle and its occupants should have been free to leave.  *See Pruitt*, *supra*. However, Deputy Blakely continued to detain the vehicle and its occupants and needed reasonable suspicion in order to do so.  *Id.  See, also, Boyce, supra*. That reasonable suspicion was absent at this point and voided any subsequent evidence discovered and/or statements obtained by the Government.  *See Pruitt* and *Boyce*.

Here, Deputy Blakely ordered Mr. Megahed out of the vehicle in order to perform a search of the vehicle.  Deputy Blakely further questioned Mr. Megahed regarding the contents of the automobile while Mr. Megahed was still in custody but without the benefit of *Miranda* warnings.

Mr. Megahed's responses were obtained by Deputy Blakely in violation of *Miranda* and, as a result, these statements must be suppressed.  *See United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007)(providing that custodial interrogation

cannot occur before a suspect is warned of his or her rights against self-incrimination)(citing *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612 (1966)).

Additionally, such questioning by Deputy Blakely was illegal and should also result in the suppression of Mr. Megahed's response. *See Boyce*, 351 F.3d at 111 (providing that there are two possible tests for when a police investigation exceeds the scope of a routine traffic stop: (1) the first test comes from the Tenth Circuit and limits the questions a police officer may ask to those questions that are justified by reasonable suspicion of criminal activity or reasonable safety concerns; (2) the second test comes from the Fifth Circuit and holds that questions unrelated to the reason for the initial stop are only unlawful if they extend the duration of the initial seizure)(citing *United States v. Purcell*, 236 F.3d 1274, 1279-80 (11th Cir. 2001)).

Here, with respect to the first test, Deputy Blakely had no reasonable suspicion of criminal activity as argued above. Also, Deputy Blakely had no reasonable safety concerns prior to having Mr. Mohammed exit vehicle. Even after Mr. Megahed exits his vehicle—which was illegal at this point in the sequence of events—Deputy Blakely had no reasonable safety concerns.

With respect to the second test, Deputy Blakely's questioning of Mr. Megahed concerning his travel plans was unrelated to why Deputy Blakely stopped the vehicle

18

for speeding.  Such questions extended the duration of the initial seizure of Mr.
Megahed.  Thus, as in the first test, this Court should find that such questions were
illegal and Mr. Megahed's response should be suppressed.

### 6.    The Taint of the Illegal Detention Was Not Purged.

In analyzing whether the taint has been purged in a case, the critical inquiry is
whether, granting establishment of the primary illegality, the evidence to which
instant objection is made has been come at by exploitation of that illegality or instead
by means sufficiently distinguishable to be purged of the primary taint.  *See United
States v. Tookes*, 633 F.2d 712, 716 (5th Cir. 1980)(citing *Wong Sun*, 371 U.S. at 488,
83 S. Ct. at 417 (1963)).  *See also, Davis*, 313 F.3d at 1302-03.  "To aid this inquiry,
this Court has established guidelines to determine whether the connection between
the illegal arrest and the discovery of the evidence has become so attenuated as to
dissipate the taint and ensure the admissibility of the evidence".  *Tookes,* 633 F.2d at
716.

Among these factors are: (1) the proximity of the illegal arrest to the
procurement of the challenged evidence; (2) the presence of intervening
circumstances between the arrest and the discovery of the evidence; **and** (3) the
circumstances under which the arrest was made.  *Id.* (citing *United States v. Wilson*,
569 F.2d 392, 396 (5th Cir. 1978); *Phelper v. Decker*, 401 F.2d 232, 237 (5th Cir.

19

1968)).

Here, with respect to proximity, Deputy Blakely continuously illegally detained Mr. Megahed, questioned Mr. Megahed and learned nothing more than the fact that he and Mr. Mohammed were traveling from Tampa, Florida, to North Carolina. Thus, due to the proximity of the continuous illegal seizure and Deputy Blakely's search of the vehicle, the taint is not purged from Deputy Blakely's continued seizure of Mr. Megahed.

Finally, for the reasons presented above, Mr. Megahed requests this Court to consider the circumstances under which his continued detention and arrest were made. Deputy Blakely had learned that both Mr. Megahed and Mr. Mohammed had valid driver's licenses, the vehicle registration was valid, and neither occupants of the vehicle had arrest warrants outstanding. However, Deputy Blakely elected not to write a traffic ticket or a traffic warning and, instead, chose to continue to detain Mr. Mohammed, Mr. Megahed and the vehicle so he could investigate his "hunch", which is based on the racist premise that Mr. Mohammed and Mr. Megahed must be up to unlawful activity because they are of Middle Eastern descent. After receiving the information from dispatch concerning the driver's licenses and the vehicle registration, Mr. Mohammed and Mr. Megahed should have been free to leave. As a result, this Court should find that law enforcement's continued detention of Mr.

20

Mohammed and Mr. Megahed was illegal and that the taint has not been purged.

**WHEREFORE**, the Defendant, YOUSSEF SAMIR MEGAHED, respectfully requests: a) this Court grant an evidentiary hearing; b) following said hearing, this Court enter an order finding that the stop, detention and subsequent search on August 4, 2007, was unlawful and in violation of his Fourth Amendment right of the U.S. Constitution; and c) that this Court order the exclusion from the entry of evidence at trial any and all items seized and statements made in relationship to the August 4, 2007, unlawful search and seizure.

Respectfully submitted,

R. FLETCHER PEACOCK
FEDERAL PUBLIC DEFENDER

/s/ James W. Smith, III
James W. Smith III, Esq
Florida Bar No. 0096438
Assistant Federal Public Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Fax: (813) 228-2562
Email: James_Smith@fd.org
Attorney for Defendant Megahed

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of December, 2007, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Jay Hoffer, Assistant United States Attorney.

/s/ *James W. Smith III*

James W. Smith III, Esq.
Assistant Federal Public Defender

22