**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No. 8:07-CR-342-T-
                                                       23MAP

AHMED ABDELLATIF SHERIF MOHAMED

_____/

**DEFENDANT AHMED MOHAMED'S MOTION TO
SUPPRESS EVIDENCE SEIZED FROM VEHICLE,
REQUEST FOR EVIDENTIARY HEARING AND
WITNESS STATEMENTS, AND MEMORANDUM OF LAW**

The Defendant, AHMED ABDELLATIF SHERIF MOHAMED, by and

through his undesigned counsel, pursuant to Federal Rule of Criminal Procedure

12(b)(3)(C) and the Fourth Amendment of the United States Constitution, hereby

requests this Honorable Court to set this motion for evidentiary hearing, to direct

the Government to produce the statements of witnesses at that hearing, and to

suppress and exclude from evidence in the trial of the above-styled cause all

evidence seized and obtained by law enforcement from the Defendant's vehicle

following a traffic stop, and as grounds therefor states:

1. On the afternoon of August 4, 2007, a motor vehicle driven by the

Defendant, in which co-defendant Youssef Samir Megahed was the only

passenger, was stopped on Highway 176 in Berkeley County, South Carolina, by Berkeley County Sheriff's Deputy Lamar Blakely.

2.  The sole purported reason for this traffic stop was purportedly for traveling 58 miles per hour in a 45 miles per hour zone, although no traffic citation for this offense was ever issued to the Defendant.

3.  The entire episode of the traffic stop itself and the prolonged investigation, interviews, and search that followed were recorded by a video camera mounted on the dashboard of the deputy's cruiser which included an audio recording of a substantial portion of the conversation between the deputy, the two defendants, and other law enforcement officers at the scene of the traffic stop.

4.  This same video and audio recording of the traffic stop has been discovered by the Government to the Defendant.

5.  This recording includes a visible date and time stamp showing the military time which facilitates location of pertinent portions of the traffic stop and the search of the vehicle.

6.  With reference to the military time appearing on the face of the video image, the video recording of the traffic stop depicts the following events:

    A.  At 17:28 the deputy began to follow the motor vehicle driven by the Defendant, and at 17:29 the traffic stop was effected.

2

B.  In his initial contact with the Defendant, Deputy Blakely asked for drivers license and registration and insurance.

C.  Due to lack of registration documents, Deputy called in license tag number to confirm ownership of the vehicle from his cruiser.

D.  Starting at 17:34:19, while calling in the traffic stop, the deputy noted to another officer in reference to the defendants that "both are sitting, holding Korans in their lap while driving," that they are "damn Taliban," and that "they're acting weird as crap."

E.  At 17:35:40 the deputy said to another law enforcement officer, "I've got Taliban, bro," and "they've got a bomb strapped to them."

F.  At 17:36:12 dispatch notified the deputy and confirmed ownership of the motor vehicle by the co-defendant's brother.

G.  At 17:37:15 another officer said "maybe they're going to practice a suicide bombing here."

H.  At 17:39:01 the deputy announced to his backup officer his intent to search the Defendant's vehicle, saying, "I'm going to get him out, I'm going to search his car."

I.  At 17:39:45 the deputy directed the Defendant to exit car and walk to the back of the vehicle, at which point the Defendant began to

assume a search position and asked , "You're going to search me?'

J.  From 17:40:15 to 17:43:00 the deputy asked the Defendant what he went to school for, what he was doing in South Carolina, what route he took to arrive in the area, what locations he passed through on his way, why he was driving, how long he had been driving, where he stayed the night before, and what time he left Tampa.

K.  Starting at 17:43:00 the deputy asked similar questions of the co-defendant, then questioned the veracity of his answers.

L.  At 17:45:35 the deputy asked the co-defendant, "Nothing in the vehicle I should know about, drugs, guns, knives?"

M.  At 17:45:53 the deputy resumed questioning of the Defendant on who drove the vehicle since leaving Tampa and where they stopped in Georgia.

N.  At 17:46:40 Deputy asked the Defendant, "Anything in this vehicle we should know about, guns, knives, drugs?"  In response, the Defendant stated that he had fuel and fireworks including fuses and "small homemade rockets."

O.  At 17:47:15 the deputy asked the Defendant, "You don't have a problem if I look then, right?"  In response, the Defendant shrugged

and said, "If you must."   The Deputy then directed that the Defendant was to be patted down, then opened the passenger door, directed the co-defendant to exit the vehicle, and patted down the co-defendant.

P.  At 17:48:15 the deputy began searching the interior of the vehicle with the assistance of another officer, which included a detailed review of receipts and other papers found in the car.

Q.  At 17:57:15 deputy radioed for additional assistance from other officers to search the vehicle.

R.  At 17:58:30, upon discovering a box of bullets in the vehicle, the deputy directed that the defendants be put in handcuffs.

S.  At 18:00:35 the deputy took the keys from the ignition, opened the vehicle trunk, and proceeded to search the trunk where the items at issue in Count Two of the Indictment were located.

T.  The Defendant was not given "Miranda warnings" in any form, however deficient, until 19:04:35, more than an hour and a half after the stop.

7.  Because the arresting deputy through a show of police authority performed a traffic stop of a motor vehicle driven by the Defendant for a purported traffic violation and continued to exert police authority in the interview that

followed, which included directions to the Defendant to exit the motor vehicle and to walk to the rear of the vehicle, the Defendant was detained, and this detention resulted in a seizure of the Defendant's person as contemplated by the Fourth Amendment of the United States Constitution.

8.  The search of the vehicle was without a warrant and is presumed to be unreasonable absent exigent circumstances or valid consent.

9.  None of the statements by the Defendant or his co-defendant to the deputy would lead a reasonable law enforcement officer to believe that a violation of the law had been committed or was being committed or that otherwise exigent circumstances existed for the search of the car.

10.  The Defendant's purported consent upon which the deputy relied to search the vehicle was not a valid consent for the following reasons:

A.  Based upon his invalid perception and conclusion that the defendants were "damn Taliban" and were acting "weird as crap" and without any articulable reason to believe that a crime had been committed or was being committed, the deputy announced his intention to conduct a warrantless search of the vehicle without consent and without exigent circumstances, and as such the resulting search was entirely pretextual.

B.  Consent to search was obtained by detaining the Defendant for an unreasonable length of time and questioning the Defendant extensively on matters not pertaining to the reason for the traffic stop without advising the Defendant of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), specifically by asking if the Defendant was potentially in possession of illegal items, extracting admissions that the Defendant was in possession of the items for which he is now charged in Count Two of the Indictment, and then, in response to these admissions, asking for consent to search, all in violation of the Defendant's rights guaranteed by the Fifth Amendment of the United States Constitution.

C.  The Defendant's statement, "If you must," in response to the deputy's statement, "You don't have a problem if I look then, right?" does not constitute a valid consent to search.

11.  Because the warrantless search of the vehicle was without exigent circumstances and was without valid consent, the search of the vehicle and the seizure of any and all items found in the vehicle were in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, and therefore any and all seized items and any and all testimony relating to

observations and examinations of these items should be excluded from evidence.

12.  The Defendant would further move for an evidentiary hearing of this motions and, if an evidentiary hearing is held on this motion, that the Government provide any and all written statements in the Government's possession of the law enforcement officers involved in the above-described traffic stop and vehicle search as required by Federal Rules of Criminal Procedure 12(h) and 26.2.

WHEREFORE, the Defendant requests this Honorable Court to exclude from evidence in the trial of this cause any and all documents and items seized in the above-described search of the motor vehicle and any and all testimony relating to observations and examinations of these documents and items, and further requests an evidentiary hearing and the written statements of witnesses as required by Federal Rules of Criminal Procedure 12(h) and 26.2.

## Memorandum of Law

The traffic stop of the Defendant by the deputy, even if for a few minutes and for a limited purpose, constituted a seizure of the Defendant.  Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes "seizure" of persons within the meaning of Fourth Amendment.  Whren v. United States, 517 U.S. 806,

810, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Stopping an automobile and detaining its occupants constitute a "seizure" within meaning of the Fourth and Fourteenth Amendments, even though purpose of stop is limited and resulting detention is quite brief. Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

Once the limited purpose of the traffic stop of the Defendant was fulfilled, because there was no lawful reason for detaining him further, the Defendant should have been allowed to drive on his way with his speeding warning. A traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place and should not last longer than necessary to process the traffic violation unless there is an articulable suspicion of other illegal activity. United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003). Even where probable cause exists for a traffic stop, such as speeding, once questioning relating to the reasons for the traffic stop is concluded, a vehicle and its passengers should be free to go if there is no reasonable suspicion of criminal activity. United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999).

The Defendant and his passenger should not have been questioned further by the deputy, especially on matters not pertaining to the reason for the traffic stop. It is clear from the video recording that the deputy hoped to confirm his

9

belief that the defendants were truly "Taliban."  Additional "fishing expedition" questions such as those asked of the Defendant by the deputy about his background, his travel route, and the purpose of his trip are simply irrelevant, and constitute a violation of Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968).  Pruitt at 1221.

Further, certain factors cited by the deputy which provided his incentive to search such as the defendants' ethnicity, their nervousness, and being from another state are not a basis for reasonable suspicion and further questioning.  See Pruitt at 1221 ("the factors cited by the district court in this case, e.g., being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of Officer Guthrie. Even when considered together and in light of all the facts, such observations fail to suggest that appellant and his brother were engaged in any criminal activity other than speeding on the highway").

The questioning of both defendants by the deputy culminated in a direct accusatory demand for self-incriminating information without any reasonable suspicion: "Nothing in the vehicle I should know about, drugs, guns, knives?"

Because both defendants were detained as a result of the traffic stop and were not free to leave, this effort to extract incriminating information when there was no legal ground to search the vehicle was a custodial interrogation in direct violation of the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). It should be noted from the recording that the deputy proceeded to question the Defendant for more than half an hour about his possession of the items for which the Defendant is now criminally charged without any Miranda warning until one and a half hours after the traffic stop, and even then the warning was woefully deficient and was vitiated by the deputy's subsequent assurances that the Defendant's words would not be used against him. See 18:21:49 ff. and 19:50:27 ff. on the video recording.

The extraction of the invalid consent to search occurred while the Defendant was still being detained and was not free to leave. There is no indication in the video recording that the Defendant was advised by the deputy that he was free to leave before the deputy asked for consent to search the vehicle. The circumstances of this case are distinguished from those in United States v. Ramirez, 476 F.3d 1231 (11th Cir. 2007), where once the license and registration were returned to a driver after a traffic stop, the stop turned into a consensual encounter and the driver was no longer detained for Fourth Amendment purposes.

11

In the present case, not only was the Defendant's license not returned but he was not informed until 20 minutes after the search was concluded that a speeding citation would not be issued, but only a warning. See 18:25:03 ff. of the video recording. The stop in this case never turned into a consensual encounter, and a reasonable person in the Defendant's position would not have felt free to terminate the encounter and decline the deputy's request for further information. See United States v. Ramirez at 1240. The deputy was therefore obligated to comply with the Fourth Amendment in his efforts to search the vehicle.

Although an improper motive as a pretext for a search does not invalidate a lawful search as part of a traffic stop, a pure pretextual search without any lawful basis violates the Fourth Amendment. Whren v. United States, 517 U.S. at 812-813. Here, the deputy announced his intent to search the Defendant's car solely because the defendants were "Taliban" and were "acting weird as crap." He then fulfilled his intent by proceeding artfully to coerce the Defendant into an admission to possession of certain items and a purported consent without ever having any reasonable or articulable ground for the search. As such, the coerced consent is invalid.

Whether an individual's consent to a warrantless search was given voluntarily is a question of fact to be decided in light of the totality of the

12

circumstances.  United State v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001).  To be voluntary, consent to search must be the product of an essentially free and unconstrained choice.  Id., quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973).  It is axiomatic that where there is coercion there cannot be consent.  Schneckloth, 412 U.S. at 228-229.  Under the totality of the circumstances presented on the video recording, there is no indication that the Defendant's purported consent to search was the product of a free and unconstrained choice.

The words uttered by the Defendant, "If you must," when the deputy asked, "You don't have a problem if I look then, right?" are not sufficient to convey consent.  This statement was a concession, not a consent, and at most amounts to a failure to object.  The failure to object to a search does not amount to a consent to search.  United States v. Gonzalez, 71 F.3d 819, 829 (11th Cir. 1996).  It should also be noted that the Defendant, a foreign national who had been in the United States about eight months at the time of the stop and largely unfamiliar with the laws of the United States, would not be expected to know that he had the right to object under these circumstances, which is a factor to be considered in determining the voluntariness of the consent.  United States v. Guapi, 144 F.3d 1393, 1394-95 (11 th Cir. 1998).  Under the totality of the circumstances as

13

depicted on the video recording, the Defendant's "consent" amounted to a failure to object and was not sufficient to establish a consensual search.

Because the search of the Defendant's vehicle was purely pretextual, because the consent itself was invalid, and  because consent was coerced, the warrantless search of the vehicle violated the Fourth Amendment prohibition against unreasonable searches and seizures, and the documents and items seized, and all other evidence relating to them, must be excluded from the trial of this cause.

Respectfully submitted,


S/ Bruce G. Howie
Bruce G. Howie
Florida Bar No. 263230
Bruce G. Howie, P.A.
13577 Feather Sound Drive, Suite 300
Clearwater, FL 33762
Telephone (727) 572-6666
Facsimile (727) 571-1415
Email: howie @ brucehowie.com

**Certificate of Service**

14

I HEREBY CERTIFY that on February 6, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jay L. Hoffer, Esq.
Office of the United States Attorney

Adam B. Allen, Esq.
Federal Public Defenders Office

S/ Bruce G. Howie
Bruce G. Howie
Florida Bar No. 263230
Bruce G. Howie, P.A.
13577 Feather Sound Drive, Suite 300
Clearwater, FL 33762
Telephone (727) 572-6666
Facsimile (727) 571-1415
Email: howie@brucehowie.com