# UNITED STATES OF AMERICA
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **CASE NO.  8:07-cr-342-T-23-MAP**

**YOUSSEF SAMIR MEGAHED**

_____/

## DEFENDANT MEGAHED'S OBJECTIONS
## TO FEBRUARY 28, 2008 REPORT AND RECOMMENDATION[1]

COMES NOW the Defendant, YOUSSEF SAMIR MEGAHED, by and through his undersigned counsel, and hereby files his factual and legal objections to the February 28, 2008 Report and Recommendation (hereinafter "**R&R**") (Doc. 150) denying his previously filed Motion To Suppress Any and All Physical Evidence And/Or Statements. (Doc. 76).

## PROCEDURAL HISTORY

On December 21, 2007, Mr. Megahed filed a Motion To Suppress Any and All Physical Evidence And/Or Statements. (Doc. 76).  The defendant's motion was referred to the Magistrate to conduct an evidentiary hearing on the motions and to issue a R&R. (Doc. 77).  A two-day evidentiary hearing on the defendant's motion

_____

[1]Doc. 150.

-1-

was conducted before the magistrate on February 19, 2008, and February 20, 2008. (Doc 77).

In  Mr. Megahed's written motion to suppress and at the evidentiary hearing on the motion, Mr. Megahed alleged that all of the evidence obtained after the August 4, 2007 traffic stop of a vehicle which was being driven by co-defendant Mohamed, in which Mr. Megahed was a front-seat passenger, must be suppressed because the stopping officer lacked probable cause to stop the vehicle; because he and his co-defendant were unlawfully detained longer then necessary to complete the traffic stop;  and, because the stopping officers did not obtain valid consent to search the vehicle. (Doc. 77, Doc. 146, Doc. 159).  Following the evidentiary hearing, the magistrate court issued its R&R on February 28, 2008, recommending that this Court deny all of the defendants motions to suppress. (Doc. 150.)

### THE FEBRUARY 28, 2008 REPORT AND RECOMMENDATION

Contrary to the defense assertions, the R&R found that Deputy Lamar Blakely did have probable cause to stop the vehicle in question, the detention and questioning of the defendants following the stop of the vehicle  was not unreasonable in scope or duration and the stopping officers had obtained valid consent to search the vehicle. (Doc. 150, Pg. 1).  Specifically, the R&R found that the stopping officer had probable cause to stop the vehicle for traveling 60 mph in a 45-mph speed zone and, thus,

pursuant to *Whren v. United States*, 517 U.S. 806, 809-810 (1996),  the stop of the vehicle for speeding was lawful. (Doc. 150, Pg. 8).  Similarly, the R&R found that following the traffic stop, the defendants were not unlawfully detained longer than necessary to complete the traffic stop because the detention was not unreasonable in its length and there was reasonable suspicion of criminal activity that justified the continued detention of the defendants. (Doc. 150, Pgs. 8 - 14).  Finally, the R&R found that Deputy Blakely obtained valid consent from Mr. Mohamed to search the vehicle. (Doc. 150, Pg. 12).  As such, the R&R found that the defendant's motions should be denied. (Doc. 150, Pg. 14)

For the reasons stated below, Mr. Megahed objects to the factual findings and legal conclusion made in the R& R related to the lawfulness of the stop of the vehicle, the prolonged detention of the defendants longer than necessary to complete the traffic stop, as well as the validity of the consent to search the vehicle.

### FACTUAL AND LEGAL OBJECTIONS

#### A.    The Traffic Stop

A law enforcement officer's temporary detention of individuals during a traffic stop, "even if only for a brief period and for a limited purpose," implicates the Fourth Amendment's guarantee against unreasonable searches and seizures. *See Whren v. United States*, 517 U.S. 806, 809-810 (1996).  A law enforcement officer's decision

to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id*.

The R&R incorrectly concludes that the stopping Officer, Deputy Lamar Blakely, had probable cause to stop the defendant's vehicle for speeding and, thus, the stop of the defendant's vehicle was lawful. (Doc. 150, Pg. 8). Specifically, the R& R factually found that the Defendant's vehicle was observed by Deputy Blakely traveling on Highway 176 in Goose Creek, South Carolina. (Doc. 150, Pg. 1). Deputy Blakely began to follow the vehicle and, at some point, concluded, without the aid of a radar device, that the vehicle was speeding. (Doc. 150, Pg. 1). Based on this factual finding, the R&R reached the legal conclusion that, pursuant to *Whren*, Deputy Blakely had probable cause to stop the vehicle for speeding and, thus, the stop of the vehicle did not violate the Fourth Amendment. (Doc. 150, Pgs. 6 - 8).

The factual and legal conclusions in the R &R should be rejected by this Court because they hinge on the credibility of the testimony of Deputy Blakely which was undeniably rebutted and refuted by the evidence presented at the suppression hearing. Specifically, the R& R makes the factual findings that:

    1.    The defendants were traveling 60 mph in a 45- mph zone and, thus, were speeding;

    2.    Deputy Blakely did not stop the vehicle because its two occupants

were men of color;  and

3.    Deputy Blakely suspected that the defendants  may have been engaged in illegal drug activity.

(Doc. 150, Pgs. 7 - 8).

While the R& R fails to explicitly make any findings that Deputy Blakely was credible in his testimony, to accept these above factual conclusions the R& R must accept the proposition that Deputy Blakely was a truthful, reliable, and credible witness.   The transcript of Deputy Blakely's testimony at the evidentiary hearing reveals that Deputy Blakely was anything but credible.  Specifically, he attempted to characterize his nakedly racist statements, captured on Government's Exhibit 1, as merely "unprofessional jokes."(Doc. 146, Pg. 77).   On cross-examination, when confronted with his racist statements, Deputy Blakely attempted to blame the media for his views concerning Muslim men. (Doc. 146, Pg. 163).  He also stated that after he stopped Mr. Megahed's vehlcle, he suspected the defendants of being involved in illegal drug activity. (Doc. 146, Pg. 143).  However, at no time during the traffic stop did he make any comments regarding this topic. (Government's Exhibit 1 and Defendants' Exhibit 7).  Additionally, he failed to put any references to illegal drug activity in his report concerning the traffic stop. (Doc. 146, Pgs. 143 - 144).   In fact, all of Deputy Blakely's statement concerning the defendants related to his bigoted

assumption that they must have been terrorists.(Doc. 146, Pgs. 163 - 164).

Furthermore, in an interview with *The Tampa Tribune* concerning the traffic stop, Deputy Blakely stated that it is his policy to never make determinations concerning an individual's background during a traffic stop. *Id.* The racist statements made by Deputy Blakely on Government's Exhibit 1[2] clearly contradict this assertion. (Government's Exhibit 1, 5:33:38 to 5:39:37).  Finally, Deputy Blakely admitted that he stopped a vehicle without reasonable suspicion or probable cause less than one hour before the traffic stop in the instant case. (Doc. 146, Pgs. 141 - 142).  Deputy Blakely's  racial and biased comments during the traffic stop and at the suppression hearing demonstrate that he harbors a deep-seated bias towards Muslims.  The R&R should have concluded that this bias taints his credibility.

Evidence of bias has long been viewed as a factor that should cause fact finders to treat a witnesses' testimony with great caution. (Weinstein's Federal Evidence at § 607.04).  It is not illogical to conclude that a witness who would make statements about Muslim men such as the ones made by Deputy Blakely would seek to testify falsely concerning the justification for the traffic stop.  It was error for the R&R to fail to consider this factor in its analysis and it is respectfully submitted that this

_____

[2]Government's Exhibit 1 is the patrol vehicle stop video and Defendants' Exhibit 7 is a transcript of relevant portions of Government's Exhibit 1.

Court should consider the credibility of Officer Blakely in the Court's review.   Lest

one consider this a false charge of racial bias, one need only look to the words of

Deputy Taylor at the suppression hearing.  Most telling was the following testimony

on cross-examination:

> Q:    At some point when they started speaking, you heard what you
>       described as "the accents"; correct?
>
> A:    Yes, sir.
>
> Q:    Then you looked down and saw a book; correct?
>
> A:    Yes, sir.
>
> Q:    And then you made an assumption that it was a Koran?
>
> A:    Yes sir.
>
> Q:    And that these two individuals are from the Middle East?
>
> A:    Yes.
>
> Q:    And it scared you didn't it?
>
> A:    I wouldn't say "scared." Like I said, it's not something you see
>       everyday; and it just, I guess made me nervous, yes, sir.
>
> Q:    You wouldn't been scared if they had the Bible; is that correct?
>
> A:    No, Sir, it probably wouldn't have.

(Doc. 159, Pgs. 37, 30).

The objective evidence  presented at the suppression hearing, specifically Government's Exhibit 1 and Defendants' Exhibit 7, also cast extreme doubt on Deputy Blakely's truthfulness.  Deputy Blakely testified at the suppression hearing that he first observed the defendant's vehicle when he made a right turn onto Highway 176. (Doc. 146, Pg. 45).  According to Deputy Blakely, he noticed that the defendant's vehicle had a Florida license plate and that the driver of the vehicle was staring at him. (Doc. 146, Pg. 5).  Deputy Blakely also testified that the vehicle began to increase its speed. (Doc. 146, Pg. 48).  Deputy Blakely goes on to claim that he began to pace the vehicle in order to determine if it was speeding. (Doc. 146, Pg. 45).  Deputy Blakely further testified that prior to making a determination that the defendants may have been violating a traffic law, he noticed that the defendants were men of color. (Doc. 146, Pg. 150).

According to Deputy Blakely, he eventually made a determination that the defendant's vehicle was speeding in an area where the speed limit was 45 miles per hour and, as a result, he activated his lights directly in front of a Wal-Mart located on Highway 176. (Doc. 150, Pg. 1).  In court, Deputy Blakely testified that there is a three-second delay between the activation of his vehicle's lights and the activation of his camera. (Doc. 150, Pg. 2).  At the suppression hearing, the defense presented a videotape of Highway 176 which established that Officer Blakely's account of

when he activated his lights was untruthful. (Defendants' Exhibit 7).

Not withstanding this clear contradiction, the R&R found that , "*As it passed a Wal Mart, the Toyota sped up to a rate of 60 miles per hour in a posted 45 miles per hour zone. Blakely activated his lights signaling he intended to stop the Toyota for the infraction.  Despite opportunities to safely pull off the highway, the Toyota's driver continued for a about a mile before stopping on the highway's shoulder.*" (Doc. 150, Pgs. 1 - 2).

A review of Government's Exhibit 1 and Defendants' Exhibit 7 makes it very clear that Deputy Blakely's vehicle and the Defendant's vehicle were in a area where the speed limit was 55 miles per hour at the time of the stop, and that Deputy Blakely did not activate his lights in front of the Wal-Mart.  Government's Exhibit 1 and Defendants' Exhibit 7 establish the following facts:

   a. Deputy Blakely activated his lights just past the Alcoa Plant located on Highway 176.

   b. The area where Deputy Blakely activated his lights, taking into account the three-second differential referenced above, is located within a 55 mile per hour zone. A viewing of Defendants' Exhibit 7 at the 5:05 time marker establishes undisputably that Deputy Blakely's assertion that he observed the defendants speeding in

a 45 mile per hour zone is false.

As such, it is clear that Deputy Blakely's testimony regarding his probable cause to stop the Defendant's vehicle was not truthful and, as such, this Court should sustain Mr. Megahed's objection to the R& R's finding that probable cause existed to justify the stop of the vehicle. This Court should then further enter an order finding that probable cause did not exist to justify the stop of the vehicle and, as such, all of the evidence obtained subsequent to the unlawful stop must be suppressed as the fruit of the poisonous tree.

## B.   The Duration of the Traffic Stop

In addition to rejecting the R& R's conclusion that the stop of the vehicle was lawful, this Court should also sustain Mr. Megahed's objection to the Report and Recommendation's finding that the defendants were not unlawfully detained longer than  necessary to complete the traffic stop. (Doc. 150, Pg. 1).  The law is well-established that a law enforcement officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place" and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). In *United States v. Boyce*, the Eleventh Circuit articulated reasonable suspicion as "specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrants that intrusion." *United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir. 2003) *quoting United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

In denying the defendants' claim that they had been unlawfully detained longer than necessary to complete the traffic stop, the R& R relies primarily on footnote 7 of the Eleventh Circuit opinion in *United States v. Hernandez*, 418 F.3d. 1206 (11th Cir. 2005).[3] The *Hernandez* case is both factually and legally distinguishable from the instant case. Specifically, the R& R states that, "Blakely's questioning of the Defendants about their travel itinerary did not unduly prolong the stop, and if it did to a slight degree, Blakely had adequate, articulable, and reasonable suspicions for asking a few more questions." (Doc. 150, Pgs. 11 - 14).

The R&R's strict temporal analysis and reliance on footnote 7 from *Hernandez* is improper and should be rejected by this Court. Contrary to the R&R's suggestion, the appropriate method of evaluating the lawfulness of the defendants' prolonged detention is not based on the length of constitutional violation but, instead, on whether a Fourth Amendment violation has occurred.

---

[3]Footnote 7 reads in pertinent part that, "Where at its inception a traffic stop is a valid one for violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration; the detention is too short. By the way, no appellate decision has been called to our attention that has held such a short detention - linked to a legitimate stop - to be an unreasonable seizure under the Fourth Amendment on account of the stop's duration." *Hernandez*, 418.F.3d at 1212 n.7.

The R&R's reliance on *Hernandez* is improper for several reasons. First, in *Hernandez*, the questioning by the law enforcement officer took place while the initial traffic investigation was still taking place (i.e., before the officers had received information verifying that no active warrants existed and the driver's license was valid). *Hernandez*, 418 F. 3d. at 1208. In contrast, in the instant case, Deputy Blakely continued to question and detain the defendants after he had received confirmation that the defendants' driver's licenses were valid, the vehicle was not reported stolen, and there were no active warrants for the defendants. (Government's Exhibit 1, 5:36:01 - 5:48:59). In fact, Deputy Blakely continued to detain and question the defendants even after he had completed writing the speeding warning citation. *Id.*

In essence, what we have in the instant case is an improper detention after a completed traffic stop. Contrary to the R&R's findings, such a detention is clearly unlawful. As the Eleventh Circuit held in *United States v. Pruitt* 174 F.3d 1215 (11 May 1999), once the traffic investigation is complete, the driver and all occupants of the car must be allowed to leave and they can only be detained if there is reasonable suspicion or probable cause to believe that criminal activity is afoot. Continued detention of a vehicle and its occupants after a traffic stop is permissible if there is probable cause or reasonable suspicion of criminal activity. *Id* at 1221. Absent probable cause or reasonable suspicion, the police-citizen encounter must cease

unless the citizen provides consent. *Id.*  Contrary to the R&R's findings, the defendants' continued presence at the scene was not consensual because Deputy Blakely failed to return Mr. Mohammed's driver's license and, as such ,the defendants were not free to leave and were not participating in a consensual encounter. *See United States v. McKneely*, 6 F.3d 1447, 1451 (10th Cir. 1993) ("We have consistently held an officer who retains a driver's paperwork while asking the person questions unrelated to the initial purpose of a traffic stop must have reasonable suspicion to do so because such a detention constitutes a seizure within the meaning of the Fourth Amendment.")

Contrary to the R&R's findings, in the present case there existed no objective, particularized facts known to  Deputy Blakely that justified the continued detention of the defendants.  Specifically, Deputy Blakely provided testimony concerning several facts that the R&R contends amount to reasonable suspicion of criminal activity.  These facts include Deputy Blakely's assertion that the vehicle traveled a mile before stopping, that Mr. Megahed and Mr. Mohammed engaged in suspicious movements after the vehicle stopped, and that the defendants provided odd answers to questions concerning ownership and registration of the vehicle and their travel itinerary. (Doc 150, Pg. 11).

These assertions by Deputy Blakely, neither individually nor collectively, meet

the standard for probable cause or reasonable suspicion.  Contrary to the R&R's fact findings, the defendant's vehicle did not travel for a mile after Deputy Blakey activated his lights. A careful viewing of Government's Exhibit 1, at time marker 5:28:29,  proves that the vehicle reduced its speed significantly and continued travel at this reduced  rate of speed for an additional thirty seconds before pulling over to the shoulder of the road. (Government's Exhibit 1, 5:28:29).  At best, the vehicle traveled for an additional 900 yards, not for one mile as claimed by Deputy Blakely. In fact, evidence was presented at the suppression hearing which established that from the area where the officer's in-camera video was activated until the time of the stop was no more than 3/10 of a mile. (Doc. 159, Pgs. 149 - 150).

Additionally, Mr. Megahed produced evidence at the suppression hearing that the area where the traffic stop took place was not a particularly safe place to park an automobile. (*Id* at 150).  The shoulder of the road in that particular area is slanted and bumpy. (*Id* at 34).  A clear viewing of Government's Exhibit 1 and Defendants' Exhibit 7 clearly shows that the vehicle stopped once it reached a clear and safe area. (Doc. 159, Pgs. 146 - 150).

The R&R gives great weight to Deputy Blakely's testimony that Mr. Megahed and Mr. Mohammed moved suspiciously when he approached the vehicle. (Doc. 150, Pg. 11).  Government's Exhibit 1 does show that there was some movement within

the vehicle immediately following the traffic stop.  However, it is not uncommon for individuals stopped by law enforcement to search for those items that are commonly requested after a traffic stop.  Nothing in Government's Exhibit 1 or at the suppression hearing establishes that any of the movements were so odd as to give a reasonable law enforcement officer the idea that criminal activity was afoot.

The R&R also found that the responses given by Mr. Megahed and Mr. Mohammed in response to questions concerning ownership of the vehicle contributed to Deputy Blakely's probable cause determination. (Doc. 150, Pg. 2).  Contrary to the R&R's fact finding, the providing of truthful information concerning the ownership of the automobile and spelling a name that would be difficult for many Americans to pronounce fails to demonstrate that criminal activity is afoot.  At the suppression hearing, even Deputy Blakey admitted that once he verified the information provided by Mr. Megahed concerning ownership of the vehicle, he was no longer concerned about this issue. (Doc. 146, Pg. 8).

The innocent behavior exhibited by the defendants is similar to that of the defendant in the case of *United States v. Tapia,* 912 F2d 1367, 1371 (11th Cir. 1990).  Similar to the instant case, *Tapia* involved a traffic stop that was the result of racial profiling.  In *Tapia*, the Eleventh Circuit concluded that "Arturo Tapia's looking away quickly when he passed the trooper on the highway, the Tapias' possessing

valid San Antonio driver's licenses, or the bare fact of the car being insured by a third party," did not amount to reasonable suspicion or probable cause. *Tapia*, 912 F. 2d at 1371.

Similarly, in *Pruitt*, the Eleventh Circuit noted that being a person of color, having an out-of-state license plate, being visibly nervous while interacting with law enforcement, and traveling on the interstate with a Texas license plate were facts that did not rise to the level of reasonable suspicion of criminal activity other than speeding. *Pruitt*, 174 F.3d at 1221.

While the R&R seeks to excise the racist banter and thoughts of Deputy Blakely and Deputy Taylor, such an attempt is ultimately fruitless because their racism is inextricably intertwined with their actions. The video from the stopping patrol vehicle (Government's Exhibit 1) clearly proves that Deputy Blakely and Deputy Taylor assumed that the defendants were terrorists because of the color of their skin and ethnicity and they decided that they would do what was necessary to search their vehicle. (Doc. 149, Pgs. 165 - 166). Although neglected by the R& R, the evidence presented at the suppression hearing was clear that Deputy Blakely had decided that he was going to search the vehicle before he developed any probable cause or reasonable suspicion of criminal activity. (Government's Exhibit 1, 5:34:12 to 5:39:03).

-16-

The actions of Deputy Taylor and Deputy Blakely violated the directive set out by the Eleventh Circuit in *Pruitt*, specifically, that after a traffic citation has been processed, the defendants should have been free to go, as the officer was provided at that time with no reasonable suspicion of their criminal activity." *Pruitt*, 174 F. 3d. at 1219. As such, this Court should sustain Mr. Megahed's objection and find that neither reasonable suspicion or probable cause existed to justify the detention of the defendants longer than necessary to complete the traffic stop. In this case, that unlawful detention began when the warning traffic citation had been completed and, instead of providing the defendants the citation, Deputy Blakely unlawfully ordered Mr. Mohamed out of his vehicle, interrogated Mr. Mohamed and Mr. Megahed regarding their travel plans and refused to return Mr. Mohamed driver's license so he could leave the area. The length of the unlawful detention is not the controlling issue, as concluded by the R&R. Rather, the R&R should have concluded that an unlawful detention had occurred mandating the necessity for suppression under the exclusionary rule.

**C. Consent**

In addition to the R& R's incorrect conclusion that the stop and detention of the defendants longer than necessary to complete the traffic stop was lawful, the R&R also incorrectly concludes that valid consent was given justifying the search of the

-17-

vehicle. (Doc. 150, Pg. 5).  Any alleged consent on the part of Mr. Mohammed is invalid as it was the result of an illegal detention. *See Wong Sun v. United States* 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).  Contrary to the R&R's contention that Government's Exhibit 1 establishes that valid consent was given, the video actually reveals the exact opposite conclusion.

Government's Exhibit 1, from time marker 5:45:53 to 5:48:38, contains the following sequence of events.  First, Deputy Blakely asks Mr. Mohammed if his vehicle contained any contraband such as guns, knives or drugs.  In response to this query Mr. Mohammed, demonstrating his lack of facility with the English language, replies, "Girls?"   Once again, Deputy Blakely repeats the question and Mr. Mohammed informs him that, while none of those items are in the vehicle, the vehicle does contain homemade rockets. (Doc. 150, Pg. 12).  The fact that Deputy Blakely once again requested  Mr. Mohamed's consent proves that he did not believe he had probable cause to search.   In  response to this second request for consent, Mr. Mohammed replied, "If you must." (Government's Exhibit 1, 5:45:53 to 5:48:38).  The statement "if you must" cannot reasonably be viewed as a voluntary grant of consent.  Rather, such a statement demonstrates that Mr. Mohammed felt he had no choice but to submit to the authority of Deputy Blakely. *See United States v. Gonzalez*, 71 F.3d 819, 829 (11th Cir. 1996).

In upholding its finding that valid consent existed, the R&R also claims that Mr. Mohammed's body language indicated that he did provide consent to Deputy Blakely. (Doc. 150, Pg. 6).  This finding of fact is completely refuted by the video evidence of the stop which shows that Mr. Mohamed was acting at the direction of the officer by leaving the vehicle at the officer's direction and not of his own free will.  In fact, the video reveals that Mr. Mohamed was under the impression that he was about to be searched by law enforcement, something a citizen in a voluntary and consenting situation would do.  *See* Government's Exhibit 1, 5:45:53 to 5:48:38.  As such, because Mr. Mohamed did not give valid consent,  this Court should sustain Mr. Megahed's objection and find that valid consent was not given in the present case and, thus, all of the evidence found subsequent to the search was obtained in violation of the Fourth Amendment and must be suppressed.

## CONCLUSION

For the reasons and legal authority stated above, this Court should reject the R& R's factual findings and conclusions of law and find that the stop, detention after the completion of the traffic stop, and search of the vehicle were unlawful in violation of the Fourth Amendment.  As such, all of the evidence obtained subsequent to the unlawful stop and search of the vehicle on August 4, 2007, must be suppressed.

DATED this 12th day of March, 2008.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL PUBLIC DEFENDER


/s/ James W. Smith III

James W. Smith III
Assistant Federal Public Defender
Florida Bar No.: 0096438
Office of the Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida  33602
Telephone:  813-228-2715
Facsimile:   813-228-2562
Email: james_smith@fd.org


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of March, 2008, a true and correct copy of the foregoing has been furnished by CM/ECF, which will send electronic notice of the filing to United States Attorney's Office, Jay Hoffer, Assistant United States Attorney, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.


/s/ James W. Smith III

James W. Smith III
Assistant Federal Public Defender

-20-