**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                                    **Case No. 8:07-cr-342-T-23MAP**

**YOUSSEF SAMIR MEGAHED**

_____/

## <u>MOTION IN LIMINE TO EXCLUDE EVIDENCE</u>

COMES NOW, the Defendant, YOUSSEF SAMIR MEGAHED, by and through undersigned counsel and pursuant to Federal Rules of Evidence 401, 402, 403 and 404, and hereby moves this Honorable Court for an Order excluding the following evidence the government has previously introduced during pre-trial hearings and it is assumed intends to introduce at trial.  In support of his motion, the Defendant shows as follows:

Mr. Megahed is charged, along with Mr. Mohamed, with knowingly transporting and causing to be transported in interstate commerce, explosive materials, without being licensees or permittees under the provisions of Chapter 40 of Title 18, United States Code, in violation of Title 18, United States Code, Sections 842(a)(30(A) and 2.

As this Court has repeatedly acknowledged throughout the pre-trial litigation of this case, this is a simple case requiring the showing of only two things. First, that the materials located in the trunk of the Toyota Camry within which Mr. Megahed was a passenger on August 4, 2007, are in fact "explosive materials" under the law; and, second, whether or not Mr. Megahed had knowledge of their presence when the vehicle crossed the state line.

Additionally, as this Court has noted, this is not a terrorism case. As the Government conceded during the Hearing on the Motion to Reconsider Severance, there exists no evidence of any larger "plan" involving these individuals and the alleged explosive materials; nor is there any evidence connecting Mr. Megahed to the video in Count I of the Indictment or any videos or other information found on Mr. Mohamed's computer.

Although considered by the government and the Court to be relevant to the detention argument, the following information/evidence is irrelevant to the issues at trial and grossly prejudicial to Mr. Megahed and, therefore, should be excluded:

1.    Any evidence, direct or indirect, testimonial or physical, related to Mr. Megahed's interest in firearms, to include but not limited to: his lawful purchase and ownership of the .22 rifle located in his storage unit after his arrest; the alleged inquiry into the availability of a 9mm handgun; his inquiry into firearms at the Ocala

Walmart during this trip; the ammunition located under the seat of the Toyota Camry within which he was a passenger on August 4, 2007; the alleged computer inquiry, made by someone with access to the Megahed family computers, to an auction site where ammunition was available for purchase; the purchase of gun cleaning kits and supplies; his membership to the Shoot Straight Gun Range as well as any visits there, with or without Mr. Mohammed;

2.     Any evidence, direct or indirect, testimonial or physical, relating to the video involved in Count I of the Indictment as well as any other videos or information located on Mr. Mohamed's computer, unrelated to the websites visited by Mr. Mohamed on "sugar rockets" and propellants;

3.     Any claims concerning statements allegedly overheard by an unknown third person which may or may not include anti-American comments;

4.     Information concerning the remote control boat belonging to Mr. Megahed's younger brother, which was seized by law enforcement from the Megahed family home on August 6, 2007;

5.     Testimony by government witnesses concerning opinions of what "could have been done" with either items seized or items discussed on videos and/or other information found on Mr. Mohamed's computer, to include but not limited to those

outlined in Laboratory Reports provided by government in discovery[1]; and

6.     Information put forth at pre-trial hearings concerning alleged "coded communications"; denial of naturalization; multiple passports; recent passport photo; and possible multiple green cards.

Given the fact that Mr. Megahed is charged with transporting explosive materials in interstate commerce without a license, the information outlined above is irrelevant and not material.   Any probative value this evidence may have is substantially outweighed by the unfair prejudice to Mr. Megahed.   As such, the government should be excluded from introducing the above stated evidence during its case-in-chief.

## MEMORANDUM OF LAW

### A.     Lack of Relevance (Fed.R.Evid. 401)

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.  To be relevant, evidence must relate to issues that are properly in dispute and such evidence must shed some light on those issues. *United States v. Hall*, 653 F.2d 1002 (5th Cir.

---

[1]The Government has disclosed an FBI Laboratory Report in which its explosives experts speculate how items in the trunk of the vehicle hypothetically could have been used.

1981). Implicit in that definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove; and (2) the proposition to be proved must be one that is of consequence to the determination of the action, i.e. do they bear on any issue involving the elements of the charged offense. *Id.* In other words, to be relevant, evidence must possess logical probative value toward some fact that is legally of consequence to the case. The first step in a relevance analysis is to decide whether the trier of fact conceivably could be helped by the evidence. If not, the evidence must be excluded. *Id.*

In the instant case, the government must prove that Mr. Megahed knowingly transported the items in question and that the items were in fact explosive materials. None of the above mentioned evidence relates to either of these elements, nor would it be helpful in the determination of an issue in dispute. Therefore, it is not relevant and must be excluded.

**B.      Undue Prejudice (Fed.R.Evid. 403)**

Although Fed. R. Evid. 402 makes all relevant evidence admissible, it is restricted by other rules of law. As such, even if this Court deems any or all the above listed evidence relevant, Rule 403 permits exclusion on the grounds of prejudice, confusion, or waste of time. Fed. R. Evid. 403. Rule 403 authorizes the exclusion of relevant evidence if the legitimate probative value of the evidence is

substantially outweighed by the potential damage that the evidence might do to the orderly, efficient, and fair process of the trial. *Id.*  As such, Rule 403 calls for a weighting or balancing judgment.  Probity in this context is not an absolute.  Its value must be determined with regard to the extent to which the fact is established by other evidence, stipulation, or inference.  It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).  Weighing probative value against unfair prejudice under Rule 403 means probative value with respect to a material fact if the evidence is believed, not the degree the court finds it believable. *Bowden v. McKenna*, 600 F.2d 282, 284-285 (1st Cir. 1979), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). *Accord*, *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1154 (5th Cir. 1981).

Evidence is unfairly prejudicial if it has 'an undue tendency to suggest decision on an improper basis,' commonly, though not necessarily, an emotional basis. *Advisory Committee's Note*, Fed.R.Evid. 403.  Thus, if it appeals to the jury's sympathies, arouses its sense of horror or fear, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case. *Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980). *Accord*, *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136

6

L.Ed.2d 574 (1997).

Additionally, otherwise relevant evidence may be excluded pursuant to Rule 403 if it would tend to distract the jury from the proper issues at hand or invoke the danger of misleading the jury by possibly causing the jury to attach undue weight to the evidence Fed.R.Evid. 403.  Finally, evidence of scant or doubtful probative value may be excluded because it is repetitious or a cause for delay. *See Brown v. Wainwright*, 785 F.2d 1457, 1466 (11th Cir. 1986).

In addition to lacking relevance or probative value to the issues in this case, the above outlined evidence must be excluded during the government's case-in-chief based on the highly and overly prejudicial context and import with which the jury is likely to give it.  As both the government and this Court repeatedly opined during pre-trial litigation in this case, the "sequence of events...and the attendant circumstances, (which include the above stated evidence which should be excluded), ...impel even a disinterested and cautious observer to question sharply whether any wholesome and inconsequential explanation accounts for the episode in its entirety." Doc. 61.  The Court further opined that such information created doubt as to whether the disinterested but cautious observer would associate such behavior with a "safe and tranquil citizen of the community." *Id.*  "Rather, a person about whom these attributes are discovered...is highly suspicious and threatening." *Id.*  Finally, the Court noted

that the accumulation of the evidence proffered by the government "evidenced erratic and unreasonable behavior of a character and to a degree that endangers the community to an unacceptable extent." *Id.*  It is clear that if this learned Court would come to these conclusions during a pre-trial hearing, a jury charged with determining the guilt or innocence of Mr. Megahed would surely improperly base its decision on that matter on this other, presumably, concerting behavior.  Since none of this alleged behavior or evidence goes to the issue at hand, whether or not Mr. Megahed knowingly transported explosive materials across state lines, the undue prejudice espoused by the introduction of any and all of the evidence outlined above would cause the jury to similarly be distracted and give undue weight to said information.

**C.    Similar Acts (Fed.R.Evid. 404)**

**1.    Lack of Probative Value**

Although the government, as of the filing of this Motion, has not provided notice pursuant to Fed.R.Evid. 404(b) of the intent to introduce any evidence, let alone the above listed evidence, as similar bad act evidence, Mr. Megahed would additionally submit that said evidence is inadmissible under that pretense as well.

Evidence of crimes not charged in the indictment are not admissible to show the defendant has a criminal disposition in order to generate the inference that he committed the crimes with which he is charged. *Michelson v. United States*, 335

U.S. 469, 475-76, 69 S. Ct. 213, 218 (1948).  The presumption of innocence requires a defendant be tried for what he did and not for whom he may be.

The natural and inevitable tendency of the jury is to give excessive weight to the evidence of the uncharged crimes, and either to allow it to bear too strongly on the present charge, or to justify convicting the defendant irrespective of guilt of the present charges.  1 J. Wigmore, Evidence § 194, p. 646 (3d ed. 1940).  Because the risk of prejudice is so great, strict conditions must be met before such evidence is admissible.  The admissibility of other crimes evidence is governed by Federal Rules of Evidence 404(b), which provides:

> (b) **Other crimes, wrongs, or acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b).

As the First Circuit explained in *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982):

> [Rule 404(b)] codifies the common law doctrine forbidding the prosecution from asking the jury to infer from the fact that the defendant has committed a bad act in the past, that he has a bad character and therefore is more likely to have committed the bad act now charged.

> Although "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment- creates a prejudicial effect that outweighs ordinary prejudice. . . Where the evidence has some "special" probative value, however, - where, for example, it is relevant to something other than mere "character" or "propensity"- it "may" be admitted. The trial judge then must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule.

*Moccia*, 681 F.2d at 63, *citing* Weinstein's evidence ¶ 404[04] at 404-26.

Because of the inherent prejudice in prior bad acts evidence, the Eleventh Circuit noted in *United States v. Jones*, 28 F.3d 1574, 1581 (11th Cir. 1994), that district courts should be mindful that prior crime evidence has a significant potential for prejudice and as such should not be employed unless it is really necessary.

In order to safeguard the admissibility of prior bad acts evidence, the Eleventh Circuit in *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir.) approved the Fifth Circuit's three- part test for admitting 404(b) evidence. For such evidence to be admissible, the government must show that:

1. The evidence is relevant to an issue other than the defendant's character;

2. There must be proof sufficient for a jury to find that the defendant committed the extrinsic act; and

3. The evidence must possess probative value that is not substantially outweighed by its undue prejudice and must otherwise meet the requirements of Fed. R. Evid. 403.

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir.) (en banc).

However, without an issue other than mere character to which the evidence is relevant, the probative value of those offenses is deemed insufficient in all cases to outweigh the inherent prejudice. *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). What the Rule calls for is essentially a two-part test. *Id.* First, this Court must determine that the evidence offered is relevant to an issue other than Mr. Megahed's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Fed.R.Evid. 403.

Fed.R.Evid. 404(b) lists specific purposes for which such evidence may be relevant and thus admissible. These purposes are: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* It should be noted that to be relevant, evidence must relate to issues that are properly in dispute and such evidence must shed some light on those issues. *See United States v. Hall*, 653 F.2d 1002 (5th Cir. 1981). The only qualifying purpose in this case would be knowledge. Mr. Megahed submits that none of the evidence listed above in any way shape or form shows knowledge of the items seized from the trunk of the vehicle and, therefore, would be admitted solely to show bad character and thus cannot be admitted under Fed.R.Evid. 404(b).

### 2.  Prejudicial Impact of such Evidence

In deciding on the admissibility of other prior bad acts evidence, the Eleventh Circuit established in *Miller* that once the district court determines that the prior bad acts evidence is relevant and material to an issue other than to prove the bad character of the defendant or to show action in conformity with the prior bad act, the court should employ a Fed.R.Evid. 403 balancing analysis to determine whether the probative value of the prior bad act evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992).

It is apparent that any probative value from the introduction of the above listed evidence is substantially outweighed by the unfair prejudice to the Defendant.  The admission of such evidence can only serve to confuse and mislead the jury, and to cause a jury uncertain of guilt to convict simply because Mr. Megahed is a bad person.  In essence, the admission of this evidence under Rule 404(b) functions as an attempt to convict  Mr. Megahed in the instant case on the basis of fear arising from his alleged prior actions.  As the Eleventh Circuit noted in *United States v. Jones*, 28 F.3d 1574, 1581 (11th Cir. 1994), courts should be mindful that prior crime evidence has a significant potential for prejudice and, as such, it should not be employed unless really necessary.  Mr. Megahed contends that due to its lack of relevance, the

12

admission of this evidence in this case is unnecessary to the government's case, that it is designed to inflame the jury against Mr. Megahed, and there can be no doubt that any probative value of this evidence is substantially out weighed by its prejudice to the defense.  Therefore, this Court should exclude the government's introduction in its case-in-chief any of the above-listed evidence.

As a result of the following specific reasons, the above-listed evidence should be excluded:

### a.      Lawful Interest in Firearms

The fact that Mr. Megahed has an interest in firearms, as evidenced by his ownership of a .22 caliber rifle, his possession of ammunition, as well as his membership in a firing range and recent visit to said range has no relevance nor probative value in assisting the jury in deciding the issue at hand in this case, which is whether or not Mr. Megahed knowingly transported the alleged explosive materials located in the trunk of the car across state lines.  While lawful possession of firearms, ammunition , and membership of a shooting range are viewed by many as a lawful expression of one's constitutional right to bear arms, many people view firearm possession as a sign of dangerousness of an individual and view even lawful possession as a negative character trait.  As such, even if this Court finds this evidence has some probative value, this value is greatly outweighed by the undue

prejudice generated from the inference that Mr. Megahed is a dangerous individual who possesses firearms in connection with such activity.  Therefore, the government should be prohibited from introducing any evidence, including testimony, concerning Mr. Megahed's interest in firearms.

### b.    Computer Evidence

Similarly, evidence concerning any of the videos found on Mr. Mohamed's computer, to include the video involved in Count I of the Indictment, have no bearing on whether or not Mr. Megahed knowingly transported the alleged explosive material on the day in question.[2]  Any such evidence would only confuse the jury and lead them to conclude that Mr. Megahed was somehow involved in the making of said videos or supported the message conveyed in the videos and, thus, improperly influence their verdict in the present case.

No evidence exists, nor does the government intend to introduce evidence, linking Mr. Megahed to the making of the videos. Additionally, there is no evidence that the additional videos or computer files were viewed by Mr. Megahed or that he

---

[2]In addition to the video comprising Count I of the Indictment, videos were located on Mr. Mohamed's computer that relate to various kinds of weaponry as well as the conflict in the Middle East.  It should be noted that none of these videos were located on any computers seized from Mr. Megahed nor is there any evidence he ever viewed these videos. Additionally, the items seized from the trunk of the car and comprising Count II of the Indictment are not contained in any of the videos.  Nor are they even remotely related other than the fact that Mr. Mohamed possessed and had knowledge of both the videos and items found in the trunk of the vehicle.

had knowledge of their presence on Mr. Mohamed's computer. More importantly, however, these videos and the content of the files in no way assist the jury in determining whether or not Mr. Megahed knowingly transported the items located in the trunk of the vehicle.

In contrast, by putting these videos before the jury lends itself to the ultimate conclusion that Mr. Megahed must have been involved in their making or, at the very least, supports the political beliefs espoused by them. Therefore, the admission of this evidence would improperly influence the jury and is overly prejudicial. This Court ruling granting a severing of Count I and Count II further supports the need to exclude this listed evidence from a trial on Count II.

### c.      Additional Miscellaneous Evidence

The government proffered to the Court information allegedly concerning comments overheard by an unknown third party. The Defense has received no information as to who relayed this information to the government, the context of the alleged conversation overheard or what perceived relevance to the issues in this case would be. As such, at this time, Mr. Megahed would merely submit that any evidence, in addition to possibly being hearsay, is irrelevant and put forth for the sole purpose of reflecting on Mr. Megahed's alleged political views and/or inflaming the jury, and thus, is prejudicial and inadmissible.

15

As to information concerning the remote control boat seized from the Megahed family home and belonging to Mr. Megahed's younger brother, although it may be similar to a device allegedly used by Mr. Mohammed in the video comprising Count I, since the Counts have been severed and no connection exists between Mr. Megahed and the video, again this information is irrelevant and would be admitted for the sole purpose of attempting to link Mr. Megahed to other "bad" acts of Mr. Mohammed, which is clearly impermissible.

Finally, any opinions related to what "could have" been made with or done with some of the items seized or viewed upon Mr. Mohamed's computer are speculative in nature and would only go toward creating a perception that Mr. Megahed is a dangerous or violent person, which would result in the jury determining guilt based on an impermissible basis. While the Government's expert witnesses are entitled to express an opinion on the nature and substance of the items seized in the trunk of the vehicle, they should be prohibited from expressing hypothetical opinions on how the items could have been used and or combined to accomplish some speculative unlawful purpose not charged by Count II and not supported in fact. Therefore, said testimony must be precluded.

WHEREFORE, Mr. Megahed respectfully moves this Honorable Court to enter its Order prohibiting the government from introducing in its case-in-chief the above-stated evidence .    DATED this 10th day of April, 2008.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL PUBLIC DEFENDER

s/ Dionja Dyer
Dionja L. Dyer
Florida Bar Number 0164518
Assistant Federal Public Defender
400 North Tampa, Street Suite 2700
Tampa, Florida 33602
Telephone:  (813) 228-2715
Facsimile:   (813) 228-2562
*Attorney for Youssef Samir Megahed*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day in April, 2008, a copy of foregoing was filed by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Assistant United States Attorney Jay Hoffer, at the United States Attorney's Office located at 400 North Tampa Street, Suite 3200, Tampa Florida, 33602.

s/ Dionja Dyer
Dionja L. Dyer
Assistant Federal Public Defender

17