UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                          Case No. 8:07-Cr-342-T-23MAP

YOUSSEF SAMIR MEGAHED
_____/

## DEFENDANT'S MOTION TO EXCLUDE
## IRRELEVANT, GOVERNMENT-MANUFACTURED
## "HOLLYWOOD-ESQUE" VIDEO

COMES NOW, the Defendant, YOUSSEF SAMIR MEGAHED, by and through undersigned counsel and pursuant to Federal Rules of Evidence 401, 402, 403 and 404, and hereby moves this Honorable Court for an Order prohibiting the Government from offering into evidence at trial any video and any related photographs produced by the FBI on July 15, 2008. As grounds in support thereof, the Defendant shows as follows:

On August 4, 2007, the Defendant was a passenger in a vehicle stopped for speeding in Goose Creek, South Carolina. Both the driver and the passenger informed law enforcement they had left earlier that morning from Tampa, Florida, and were headed for Sunset Beach, North Carolina. A search of the trunk of the vehicle revealed, among other things:

A.    Three (3) plastic pipes ranging from 3.1 to 4.6 " in length containing a mixture of potassium nitrate and either powdered sugar or karo syrup;

B.    safety fuse; and

C.    a plastic gas cannister filled 7.6" from the bottom with gasoline.

Subsequent to the discovery of the items in the trunk, Mr. Mohammed admitted to finding the recipe for the potassium nitrate and sugar mixture on the internet. He also admitted to putting the mixture inside the plastic pipes and bringing them on the trip. He stated that he did this because of a newly discovered interest in American "fireworks" and a desire to manufacture something similar to the "sugar rockets" he saw on the internet. In contrast, Mr. Megahed denied knowing anything about these items or their purpose. After both individuals were arrested, a search of Mr. Mohammed's residence and vehicle revealed additional piping as well as evidence that he purchased "stump remover," which contains potassium nitrate, and searches on his computer for "sugar rockets" and similar compositions used as propellants in hobby rockets. Searches of Mr. Megahed's home, computer and storage shed revealed no similar items.

FBI laboratory testing conducted in August 2007 revealed that the substance inside the pipes was a pyrotechnic mixture.  The term pyrotechnic mixture is a general term that refers to low explosives composed of an oxidizer and a fuel.  Examples include fireworks, black powder and road flares. *See* FBI Report dated October 29, 2007, by Ronald Kelly, Explosives Unit Chemist.

Additional testing concluded that when "initiated" by the use of the safety fuse, the "most violent" reaction was the "forceful expulsion" of smoke and gas.  However, given some ratios, either nothing happened at all when "initiated" or, at most, smoke was produced. During the "most violent" reactions, enough heat was produced to cause the tubes to "melt and burn." *See* FBI Report dated January 4, 2008, by Richard Stryker, Explosives Expert. None of the items exploded when ignited nor did they produce enough force to cause harm to person or property.

FBI expert Stryker also noted that "a combination" of the filled pipes with the safety fuse, lighters and gasoline "could be readily assembled into an 'improvised incendiary device.' "  However, no determination could be made whether ***these*** components were ***intended*** or specifically designed to be so combined. *Id*.  Finally, Stryker opined that if "properly initiated" the pipes had the potential to "burn violently" which could cause the pipe to be rapidly

propelled in an uncontrolled manner and/or burn. *Id.*

Mr. Megahed was originally charged with transporting "explosive materials" across state lines without a license, in violation of 18 U.S.C. 842. To be convicted of this offense, the government must show that Mr. Megahed knowingly transported these items across state lines; that these items are, in fact, "explosive materials" and that he did not have a license to transport these items. According to 18 U.S.C. 841(c), "explosive materials" include "explosives, blasting agents, and detonators." Additionally, Subsection 841(d) provides that "explosives" include: any chemical compound mixture, or device, ***the primary or common purpose of which is to function by explosion***; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters.

Additionally, in 2002, the Homeland Security Act reassigned the responsibility for publishing an annual list of additional items to be considered "explosive materials" from the Secretary of the Treasury to the Attorney General. As such, the Attorney General now has the power to include any item "he determines to be within the coverage of this chapter." *See* Pub.L.No. 107-296 § 1112(e), 116 Stat. 2135, 2276 (2002). The 2007 list, applicable to this

case, included "***potassium nitrate explosive mixtures***." *See* 71 FR 56555-02, 2006 WL 2739235(F.R.).

On April 4, 2008, Stryker authored a supplemental report. In this report, he described testing that occurred, without explanation, on March 31, 2008. The purpose of this testing was to demonstrate how the components located in the trunk of the vehicle on August 4, 2007, could be "readily assembled to construct an improvised incendiary device...or destructive device." The report did not indicate what, if any, new information was discovered in regard to "intent" or "specific design" as to the possible combination of these items.

Despite this, experts conducted six (6) tests involving six (6) different configurations of the items located in the trunk. Each test involved attaching the pipe filled with the potassium nitrate and sugar mixture to various places on the gasoline cannister, utilizing the safety fuse, and igniting such. The first four (4) configurations did not result in any ignition of the gasoline.

In the fifth test, ultimately heat caused a hole to develop in the gasoline container causing gasoline to spill onto the ground. Since 20 feet of safety fuse was wrapped around the container and ignited, the burning fuse came into contact with the spilled gasoline, causing flames and melting of the container.

For test number six, the same configuration in was utilized as in test

number five.  However the cannister was placed on the seat of a vehicle.  As a result, when the ignited fuse contacted the spilled gasoline and the material of the seat, the combustible material inside the vehicle burned.

Due to this, the experts concluded that "although some of the configurations failed to ignite the gasoline, the last two tests demonstrated that an improvised incendiary device may be 'readily assembled' from the components utilized.

On April 15, 2008, a superceding indictment was returned adding a new charge against Mr. Megahed of possessing a destructive device not registered to him as required by law, in violation of 26 U.S.C. 5861.

In order to be convicted of this new charge, the government must prove that Mr. Megahed possessed the destructive device in question, that it was a destructive device, and that it was not registered to him.  A destructive device, among other things, is *any combination of parts either designed or intended for use in converting any device into a destructive device* as defined in Paragraphs 1 or 2[1], *and from which a destructive device may be readily*

---

[1]The term destructive device means (1) any explosive, incendiary, or poison gas (A) bomb (B) grenade, (C) rocket having a propellant charge of more than 4 ounces; (D) missile having an explosive or incendiary charge of more than one-quarter ounce; (E) mine or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to expel a projectile by the action of an explosive or other propellant,

*assembled*. *See* 26 U.S.C. 5854(f)(3).

Under Subsection (f)(3), the government must prove that the parts assembled in the trunk of the vehicle - the gas cannister, the tubes with potassium nitrate and sugar mixtures, and the safety fuse - were either designed to convert "any device" into a destructive device, or that Mr. Megahed "intended" to use them in converting any device into a destructive device. In addition, it must be shown that the items could in fact be "readily assembled" into a destructive device. *Id*.

However, the statute specifically states that if the items are not designed by the manufacturer or re-designed by the user for use as a weapon, it is not a destructive device. *Id*. The statute also makes clear that, if the item is designed for use as a pyrotechnic, it is also not a destructive device. *Id*.

On August 4, 2008, the government provided a compact disc containing video recordings and photographs of "explosive tests conducted by the FBI at Quantico, Virginia, on or about July 15, 2008." The video depicts FBI personnel utilizing a "model rocket igniter" similar to that created in the video produced by Mr. Mohammed, for which he was charged with distributing, to

---

the barrel of which have a bore of more than one-half inch in diameter except a shotgun...suitable for sporting purposes.

ignite what appears to be C4 located inside a van. The video shows the destruction of the van as a result. The "special effects" utilized in the video improperly emphasize the degree of destruction that may be created with additional items not possessed by either Mr. Megahed or Mr. Mohammed at any time. Additionally, the video attempts to evoke improper emotional reaction in the jury through similar "special effects," that words cannot adequately express, but which can only be understood through actually viewing the video. The government intends to introduce this video at Mr. Megahed's trial. The government has not, however, provided any explanation as to how this video is relevant to the offense for which Mr. Megahed is charged. Neither the "explosive materials" subject to Count III of the indictment nor the "destructive device" created by the government to substantiate Count IV of the indictment are depicted in the video.

Additionally, no evidence exists that Mr. Megahed had knowledge of Mr. Mohammed's video, participated in the production thereof, or ever viewed it or intended to use a similar device. Finally, no evidence exists that Mr. Megahed or Mr. Mohammed intended to ignite C4 utilizing this "model rocket igniter" with the purpose of blowing up a van.

Therefore, this video has no relevance to the issues before the jury in Mr.

Megahed's trial but, instead, infuses fear and prejudice and must be excluded.

## MEMORANDUM OF LAW

A.      Lack of Relevance (Fed.R.Evid 401)

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401.  To be relevant, evidence must relate to issues that are properly in dispute and such evidence must shed some light on those issues. *See United States v. Hall*, 653 F.2d 1002 (5th Cir. 1981).  Implicit in that definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove; and (2) the proposition to be proved must be one that is of consequence to the determination of the action, i.e. do they bear on any issue involving the elements of the charged offense. *Id*.  In other words, to be relevant, evidence must possess logical probative value toward some fact that is of legal consequence to the case.  The first step in a relevance analysis is to decide whether the trier of fact conceivably could be helped by the evidence.  If not, the evidence must be excluded. *Id*.

The video created by the Government in July 2008 depicting a van being blown up using C4 has absolutely no relevance to whether or not Mr. Megahed

was aware of the "explosive materials" located in the trunk of the car on the date of his arrest or whether he intended to combine the items found in the trunk to create a "destructive device," not similar in any way to the device depicted in said video. Therefore, the video would not assist the jury in any manner in determining Mr. Megahed's guilt or innocence and should not be admitted at trial.

B.     Undue Prejudice (Fed.R.Evid 403)

Although Fed. R. Evid. 402 makes all relevant evidence admissible, it is restricted by other rules or law. As such, even if this Court deems any or all the above listed evidence relevant, Rule 403 permits exclusion on the grounds of prejudice, confusion, or waste of time. *See* Fed. R. Evid. 403.  Rule 403 authorizes the exclusion of relevant evidence if the legitimate probative value of the evidence is substantially outweighed by the potential damage that the evidence might do to the orderly, efficient, and fair process of the trial. *Id.*  As such, Rule 403 calls for a weighting or balancing judgment.  Probity in this context is not an absolute.  It's value must be determined with regard to the extent to which the fact is established by other evidence, stipulation, or inference.  It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. *See United States v. Beechum*, 582

F.2d 898, 914 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).  Weighing probative value against unfair prejudice under Rule 403 means probative value with respect to a material fact if the evidence is believed, not the degree the court finds it believable. *See Bowden v. McKenna*, 600 F.2d 282, 284-285 (1st Cir. 1979), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Accord*, *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir. 1981).

Without a connection between the items located on August 4, 2007, and the content of the video, it is clear that the government's sole purpose in introducing such information is to provoke an emotional and negative reaction from the jury toward Mr. Megahed, one that is unjustified and irrelevant to this case.  Additionally, the Government has conceded on numerous occasions to this Court that no evidence exists as to what, if anything, Mr. Megahed or Mr. Mohammed intended to do with the items found in the trunk of the car.

Despite this, if the jury views the video created by the Government depicting a van being blown up, the suggestion would be that Mr. Megahed intended to commit a similar act of violence and destruction.  Such a suggestion is not warranted by the evidence or permissible by law.

Evidence is unfairly prejudicial if it has "an undue tendency to suggest

decision on an improper basis," commonly, though not necessarily, an emotional one. *See* Advisory Committee's Note, Fed. R. Evid. 403. Thus, if it appeals to the jury's sympathy, arouses its sense of horror or fear, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case, it is unfairly prejudicial. *See Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980); *Accord, Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997). Additionally, otherwise relevant evidence may be excluded pursuant to Rule 403 if it would tend to distract the jury from the proper issues at hand or invoke the danger of misleading the jury by possibly causing the jury to attach undue weight to the evidence. *See* Fed. R. Evid. 403.

Finally, evidence of scant or doubtful probative value may be excluded because it is repetitious or a cause for delay. *See Brown v. Wainwright*, 785 f.2d 1457, 1466 (11th Cir. 1986). In this case, the scene depicted in the video lacks any true relevance to the issues at hand. Such an absence of relevance highlights the government's improper attempt to appeal to emotion and cause the jury to decide Mr. Megahed's fate, not on the evidence, but on his alleged association with those who oppose the United States' involvement in Middle Eastern affairs. This attempt is clearly prohibited by our system and, therefore,

this information must be excluded.

WHEREFORE, the Defendant, YOUSSEF SAMIR MEGAHED, respectfully moves this Honorable Court to enter its Order prohibiting the government from introducing at trial the above-stated video.

DATED this 29th day of October, 2008.

Respectfully submitted,

DONNA LEE ELM
FEDERAL PUBLIC DEFENDER

/s/Dionja L. Dyer

Dionja L. Dyer
Florida Bar No.0164518
Assistant Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Fax:          813-228-2562
Email:   Dionja_Dyer@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of October, 2008, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Assistant United States Attorney Jay Hoffer, 400 North Tampa Street, Suite 3200, Tampa, Florida, 33602.

/s/Dionja L. Dyer

Dionja L. Dyer
Assistant Federal Public Defender