```
1                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
2                       TAMPA DIVISION

3      UNITED STATES OF AMERICA

4

5            vs.                  CASE NO. 8:07-cr-342-T-23TBM
                                  March 20, 2009
6                                 Tampa, Florida

7

       YOUSSEF SAMIR MEGAHED,
8
            Defendant.
9
       _____/
10
                  TRANSCRIPT OF EXCERPT OF TRIAL PROCEEDINGS
11                       (TESTIMONY OF ALAN BROWN)
                  BEFORE THE HONORABLE STEVEN D. MERRYDAY
12                     UNITED STATES DISTRICT JUDGE

13     APPEARANCES:

14     For the Government:  JAY HOFFER
                            ROBERT MONK
15                          Assistant U.S. Attorneys
                            400 N. Tampa Street, Suite 3200
16                          Tampa, Florida 33602
                            813/274-6000
17
       For the Defendant:   ADAM ALLEN
18                          DIONJA DYER
                            Assistant Federal Defenders
19                          400 N. Tampa Street, Suite 2700
                            Tampa, Florida 33602
20                          813/228-2715

21     Court Reporter:      Kerry Mercade
                            801 N. Florida Avenue
22                          Suite 15A
                            Tampa, Florida 33602
23                          813/301-5024

24

25     Proceedings recorded and transcribed by
       computer-aided stenography.
```

1                          INDEX

2
**GOVERNMENT WITNESS DWIGHT ELLISOR**
3    Direct Examination by Mr. Monk...........3
     Cross-Examination by Ms. Dyer............13
4

5                   **GOVERNMENT'S EXHIBITS**

6
     **Number    Description                 Page**
7
     48 B        Photographs...................4
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          GOVERNMENT WITNESS, ALAN BROWN, SWORN

2          THE COURT:  Will you spell Alan and then Brown?

3          THE WITNESS:  Alan, A-L-A-N; last name Brown,

4     B-R-O-W-N.

5          THE COURT:  Please have a seat in the witness

6     stand, make yourself comfortable.  I'll recognize Mr.

7     Monk for your Direct Examination.

8                         DIRECT EXAMINATION

9     BY MR. MONK:

10    Q    Sir, are you a Special Agent with the Federal

11    Air Marshal Service?

12    A    Yes, sir, I am.

13    Q    And are you assigned on a temporary basis to an

14    FBI task force?

15    A    Yes, sir, I am.

16    Q    And have you during the course of this

17    investigation had occasion to participate in an

18    interview of Paulette Poliquin, specifically on

19    October 15th of 2007?

20    A    Yes, sir, I did.

21         MR. MONK:  May I approach the witness, Your

22    Honor?

23         THE COURT:  You may.

24    BY MR. MONK:

25    Q    I'd like to show you what has been marked as

1    proposed Exhibit 47 B, bravo.  Can you identify that?

2    A    Yes, sir, I can.

3    Q    And what is that?  How is it that you recognize

4    that?

5    A    I actually participated in putting this photo --

6    it's numerous photos with a number at the bottom, the

7    photo at the top.  I assisted in putting this package

8    together.

9    Q    All right.  Was that photo array used by you in

10   your interview of Paulette Poliquin on October 15,

11   2007?

12   A    Yes, sir, it was.

13        MR. MONK:  I move for admission into evidence of

14   -- is that 47 B?

15        THE WITNESS:  It's 48 B, sir.

16        MR. MONK:  48 B.

17        THE COURT:  Excuse me a second.  When you said

18   47 B several times since the onset of this witness,

19   it should have been 48 B on each occasion?

20        MR. MONK:  Yes, Your Honor.  I'm sorry.

21        THE COURT:  That's fine.  I just want to make

22   sure we were consistently inaccurate to that extent.

23   So 48 B is received on behalf of the United States.

24        (Government's Exhibit No. 48 B is received into

25   evidence.)

```
 1    BY MR. MONK:

 2    Q    When you went to -- well, on October the 15th of

 3    2007, did you actually go to Ms. Poliquin's

 4    residence?

 5    A    Yes, sir, I did.

 6    Q    By yourself or with somebody else?

 7    A    I was accompanied by another agent, Special

 8    Agent Neil Palenzuela.

 9    Q    If you did, how did you use 48 B during the

10    course of your interview Ms. Poliquin?

11    A    I brought the photo pack in a folder, at which

12    time we sat down in her dining room table, and I

13    asked her if she would be willing to look through

14    these photographs and let me know if she could

15    identify any of these individuals in the photographs.

16    Q    As people that she had seen or what?

17    A    Yes.  This was pertaining to people that had

18    came to her house to visit her tenant Ahmed Mohamed.

19    Q    All right.  If I could retrieve that, please?

20    Just to -- there are how many photos in here?

21    A    I believe there was 15, sir.

22    Q    And these are in color, correct?

23    A    Yes, sir, they are.

24    Q    The photo in the upper left and a number in the

25    lower right, correct?
```

1    A    Yes, sir, that is correct.

2    Q    And how did the identification process go when

3    you asked whether she recognized anybody?  Did she

4    flip through this or what?

5    A    Are you asking me the process in which I showed

6    her the photos?

7    Q    Yes.

8    A    Is that what you're asking?

9    Q    Yes.

10   A    Like I said, we were sitting at her dining room

11   table.  I asked her to look at the photos.  I

12   presented her with the photo pack which you just

13   showed me, and she looked at each photo.  As she went

14   through the photo, I asked her if she recognized

15   somebody as being at her residence, if she would let

16   me know the number.  I jotted the number down.  And

17   then after she went through the complete packet, I

18   went through it again and asked her to look at those

19   photos one more time.  She again said, "Yes, these

20   are the photos of people I recognize that have been

21   to the residence."

22        Then I had a -- for each photo in there I had a

23   black and white copy.  On the back of that copy there

24   was a place for somebody to sign and also a witness

25   to sign.  And I had her sign the photograph which

1 depicted the picture and the one she identified in

2 color, but now it's in black and white.  Also, the

3 corresponding number on the bottom.

4 Q Let's take a look on the screen at what has

5 already been admitted in evidence as 48 A, which Ms.

6 Poliquin I believe went through this morning and

7 identified her signature on the back, is that

8 correct?

9 A Yes, sir, she did.

10 Q And looking at the screen now, is that your

11 handwriting, your name on the back as well?

12 A Yes, sir.  Under agent/task force officer, that

13 is my name.

14 Q Then Exhibit 48 A, is a -- would be a somewhat

15 smaller universe than 48 B, is that correct?

16 A Yes, sir, that is correct.

17 Q 48 B would be the entire photo pack?

18 A Yes, sir, that's correct.

19 Q And 48 A would be only those that she

20 identified?

21 A That is correct.

22 Q Now, during the course of this identification

23 procedure, other than asking her whether she would

24 like to -- see whether she could recognize any

25 individuals, did you in any way, shape, or form

1    suggest to her who she should select?

2    A    Absolutely not.

3    Q    And did you -- and you say Agent Palenzuela was

4    with you?

5    A    Yes, sir, that's correct.

6    Q    Did you and Agent Palenzuela subsequently

7    compose a report documenting her identifications?

8    A    Yes, sir, we did.

9    Q    And was that close in time to the identification

10   procedure itself?

11   A    Yes, sir, it was within a day or so of the

12   interview.

13   Q    Let's take a look at -- in 48 B, take a look at

14   Photo Number 3.  Is that Youssef Mohamed (sic), the

15   defendant in this case?

16   A    Youssef Megahed, sir.

17   Q    I'm sorry.  I apologize.  Youssef Megahed?

18   A    Yes, sir.

19   Q    And this is Photograph Number 3, is that

20   correct?

21   A    Yes, sir, that is correct.

22   Q    Now, did you ultimately include that in the

23   pack, 48 A, of photos that she, that is Ms. Poliquin,

24   recognized?

25   A    Yes, sir, I did.

1    Q    And she signed her name on the back, is that

2    correct?

3    A    Yes, sir, that is correct.

4    Q    And in connection with what event or in

5    connection with what incident or incidents did Ms.

6    Poliquin identify Youssef Megahed's photo?

7    MS. DYER:  May we approach, Your Honor?

8    THE COURT:  You may.

9    (At side bar, on the record.)

10    THE COURT:  The question is in connection with

11    what event or incident.

12    MS. DYER:  Yes, Your Honor.

13    THE COURT:  State the legal basis for your

14    objection.

15    MS. DYER:  It would be hearsay.  And it would

16    not -- I believe it is an improper attempt to

17    rehabilitate her, and under the rules of

18    rehabilitation I don't believe it's proper.

19    THE COURT:  The question asks in connection with

20    what event was an identification made.

21    MS. DYER:  Right.  I believe one of the answers

22    may be in connection with her identifying whoever was

23    assisting Mr. Mohamed to transport the rocket out of

24    her house.  So her identification to this agent or

25    her commenting that that is what she is identifying

1      this individual as participating in is hearsay.  It's

2      not proper rehabilitation.  One, because if it's an

3      attempt at a prior consistent statement, that's not

4      what she testified to today.

5           THE COURT:  That is not what she testified to?

6           MS. DYER:  And that she identified Youssef

7      Megahed as the individual who transported the rocket.

8      Two, that would only be a permissible --

9           THE COURT:  She did not identify him?

10          MS. DYER:  She said she wasn't sure if it was

11     him.

12          THE COURT:  When I questioned her, I asked her

13     -- well, go ahead.

14          MS. DYER:  She also testified she wasn't sure if

15     it was Photograph Number 4, which she said was not my

16     client.  Second, a prior consistent statement is only

17     allowed in if --

18          THE COURT:  That's not inconsistent.  One has to

19     do with the state of mind and recollection today; the

20     other has to do with the state of her recollection

21     and what she said then.  I'm not sure I detect any

22     inconsistency that calls out for rehabilitation.

23     This witness is testifying about events that

24     occurred.

25          MS. DYER:  You are correct, Your Honor.  There

1     was no inconsistency; therefore, trying to

2     rehabilitate her by having him testify that she knew

3     at that time who it was but didn't know today, it's

4     trying to get in her prior identification that she

5     did not remember today on an improper basis, I

6     believe.

7          THE COURT:  Mr. Monk?

8          MR. MONK:  Yes.

9          THE COURT:  Can you he help me with this?

10          MR. MONK:  Under 801(d)(1)(C), a statement is

11     not hearsay if the witness appears in court and is

12     subject to cross-examination and the statement is one

13     of identification of a person after perceiving that

14     person.  This has nothing to do with inconsistency,

15     consistency, rehabilitation.  This is simply not

16     hearsay.  When she testified this morning, she said

17     she was not one hundred percent sure that --

18          THE COURT:  I think this is just an ID

19     narrative.  I agree with Mr. Monk.  I think this is

20     an ID narrative, which on the question of

21     admissibility just is what it is.  It's not

22     objectionable.  It's not objectionable under 613.

23     It's not hearsay because it's the occurrence of the

24     identification.  That's -- I don't get it.  I don't

25     get this one, Ms. Dyer.  Overruled.

1     MS. DYER:  If what she said is not hearsay, is

2     that what you're saying, Your Honor?

3     THE COURT:  Overruled is what I'm saying.

4     (End of side bar discussion.)

5     BY MR. MONK:

6     Q    In connection with what event or series of

7     events did Ms. Poliquin on October 15, 2007 identify

8     Youssef Megahed?

9     A    It was the event about the rocket.

10    Q    Specifically, the individual who assisted

11    Mohamed in taking the rocket from the residence?

12    A    That is correct.

13    Q    Did she identify Youssef Megahed as an

14    individual who often visited Mr. Mohamed at Ms.

15    Poliquin's home?

16    A    Yes, she did.

17    Q    I believe -- let's take a look at Photograph

18    Number 4 from 48 B.  Do you know who this individual

19    is?

20    A    Yes, sir, I do.

21    Q    Who is that?

22    A    That's Ahmed Ishtay (ph).

23    Q    Did Ms. Poliquin identify Mr. Ishtay as well?

24    A    Yes, she did.

25    Q    In 48 A, the black and white copy, did she sign

1   the back of that indicating her recognition?

2   A    Yes, sir, she did.

3   Q    In connection with what event on October 15th,

4   2007 did she identify Mr. Ishtay?

5   A    I believe that event was an individual that was

6   sitting on the arm of one of her sofas.  I think is

7   how she remembered that.

8        MR. MONK:  That's all I have.  Thank you.

9        THE COURT:  Thank you, Mr. Monk.

10       Has the defense any cross-examination of this

11   witness?

12       MS. DYER:  One question, Your Honor.  Thank you.

13                    CROSS-EXAMINATION

14   BY MS. DYER:

15   Q    Agent Brown, you're aware, are you not, that

16   prior to you showing Ms. Poliquin a picture of

17   Youssef Megahed that you were just discussing that

18   other members from your law enforcement agencies had

19   been out there on two prior occasions and showed her

20   pictures of Youssef Megahed?

21   A    Yes, I was aware of that.

22       MS. DYER:  Thank you, Your Honor.

23       THE COURT:  Thank you.

24       Anything more from the United States?

25       MR. MONK:  No, Your Honor.

1          THE COURT:  Mr. Brown, you may step down and

2     resume your seat at counsel table.

3          THE WITNESS:  Thank you, sir.

4          (End of excerpt of proceedings.)

5

6               C E R T I F I C A T E

7          I, Kerry Mercade, certify that the foregoing is

8     a correct transcript from the record of proceedings

9     in the above-entitled matter.

10                              S/Kerry Mercade

11                              Kerry Mercade
                                Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25