```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION

     UNITED STATES OF AMERICA


               vs.                   CASE NO. 8:07-cr-342-T-23TBM
                                     March 20, 2009
                                     Tampa, Florida


     YOUSSEF SAMIR MEGAHED,

               Defendant.

     _____/

            TRANSCRIPT OF EXCERPT OF TRIAL PROCEEDINGS
                    (TESTIMONY OF CRAIG WEEKS)
             BEFORE THE HONORABLE STEVEN D. MERRYDAY
                    UNITED STATES DISTRICT JUDGE

     APPEARANCES:

     For the Government:    JAY HOFFER
                            ROBERT MONK
                            Assistant U.S. Attorneys
                            400 N. Tampa Street, Suite 3200
                            Tampa, Florida 33602
                            813/274-6000

     For the Defendant:     ADAM ALLEN
                            DIONJA DYER
                            Assistant Federal Defenders
                            400 N. Tampa Street, Suite 2700
                            Tampa, Florida 33602
                            813/228-2715

     Court Reporter:        Kerry Mercade
                            801 N. Florida Avenue
                            Suite 15A
                            Tampa, Florida 33602
                            813/301-5024


     Proceedings recorded and transcribed by
     computer-aided stenography.
```

1                         **INDEX**

2

  **GOVERNMENT WITNESS CRAIG WEEKS**
3 Direct Examination by Mr. Hoffer..........3
  Cross-Examination by Ms. Dyer.............12

4

5                   **GOVERNMENT'S EXHIBITS**

6

   **Number       Description                       Page**
7
   21 F          Receipt of purchase............6
8  41            Home Depot purchase records....9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            GOVERNMENT WITNESS, CRAIG WEEKS, SWORN
 2        THE COURT:  State your name, please.
 3        THE WITNESS:  Craig Weeks.
 4        THE COURT:  W-E-E-K-S?
 5        THE WITNESS:  Yes.
 6        THE COURT:  Please have a seat in the witness
 7   stand, make yourself comfortable.  I'll recognize Mr.
 8   Hoffer for your Direct Examination.
 9                     DIRECT EXAMINATION
10   BY MR. HOFFER:
11   Q    Mr. Weeks, sir, good afternoon.
12   A    Good afternoon.
13   Q    Could you tell the members of the jury, please,
14   where you work and what you do for a living?
15   A    I work for Home Depot, asset protection manager.
16   Q    How long have you been employed at Home Depot,
17   sir?
18   A    A little bit over 15 years.
19   Q    I'd just ask you to speak into the mic so we can
20   hear you.
21   A    Little bit over 15 years.
22   Q    What are your duties and responsibilities at
23   Home Depot at the present time?  What do you do
24   there?
25   A    Asset protection, operations, shoplifting,
```

```
 1    internal theft, credit card investigations, check
 2    investigations.
 3    Q    What area of stores or geographic area of stores
 4    do you maintain or do you cover or do you deal with
 5    regularly?
 6    A    The Tampa district.  It's seven stores stemming
 7    from Gandy Boulevard up to Zephyrhills.
 8    Q    As a result of your 15 years with Home Depot,
 9    sir, have you become familiar with the records that
10    the company keeps, purchase records, sales records,
11    things of that nature?
12    A    Yes.
13    Q    Let me ask you, did there come a time back in
14    August of 07, 2007 and thereafter, that you were -- a
15    request was made to you to do some research as far as
16    some transaction records relating to this matter?
17    A    Yes.
18    Q    Do you recall who made a request of you or who
19    contacted you at that time?
20    A    I believe it was Arlett (ph), Agent Arlett.
21    Q    With the FBI?
22    A    I think it was FDLE investigations.
23    Q    As a consequence, were you asked to do some
24    research or pull certain items?
25    A    I was asked to pull records on a certain credit
```

1    card and transactions and video.
2         MR. HOFFER:  If I could may I approach the
3    witness, Your Honor?
4         THE COURT:  You may.
5    BY MR. HOFFER:
6    Q    Mr. Weeks, I have placed before you two
7    exhibits.  One is a group of pages and one is a
8    single page, I think.  Government's 41 for
9    identification is the large group of pages stapled
10   together.  I'd ask you to take a look at that group
11   of documents and ask you if you recognize it, tell us
12   what kind of documents or items they are.
13   A    Yes, I recognize them.  They're transactions
14   made out of Store 279, which is in Tampa, Florida.
15   They are actually copies of journals, as we call
16   them, or receipts.
17   Q    Now, were these some or all of the items that
18   you were asked to pull as a consequence of this
19   request, if you remember?
20   A    Looks like it's going to be all of them stemming
21   back to like June of 07.
22   Q    Now, the items you have there in front of you,
23   are they kept in the ordinary and regular course of
24   the business of the Home Depot store?
25   A    Electronically I can archive and research and

1  pull up any kind of records later at a later date.
2  Q   So they're kept regularly, I guess, right?
3  A   Yeah.
4  Q   And it's the business of Home Depot that you
5  keep records such as those?
6  A   Yes.
7  Q   The employees who prepare these records or
8  create them, they have a business duty of the company
9  to record things accurately and get things right, do
10 they not?
11 A   Correct.
12     MR. HOFFER:  Your Honor, at this point I'd offer
13 Government's Exhibit 41.
14     MS. DYER:  No objection.
15     THE COURT:  Exhibit 41 is received on behalf of
16 the United States.
17     (Government's Exhibit No. 41 is received into
18 evidence.)
19 BY MR. HOFFER:
20 Q   Just briefly, Government's 41, you mentioned,
21 all relate to transactions at Store Number 279?
22 A   Correct.
23 Q   Do you recall offhand, do you know where that
24 particular store is located at?
25 A   It's at 8815 North Florida Avenue.

1     Q     And that's here in Tampa?

2     A     Tampa, Florida.

3     Q     Just if you could real briefly, the first page

4     looks like a sort of a summary of sorts, is that

5     correct?

6     A     It's a -- what that is is that's actually a

7     summary of the credit card history pertaining to the

8     certain credit card made in these transactions.

9     Q     Now, the following pages are somewhat different

10     kinds of documents.  If you could, I'm just going to

11     use -- actually, let me turn to the third page of the

12     group, Page 3 up there, if you would.  I'm going to

13     put it up on the screen.

14     A     Um-hum.

15     Q     Again, what kind of a record is this and what's

16     reflected in it this record here?

17     A     It is an electronic receipt or journal that's

18     saved for records and it's actually a receipt for

19     what is stump remover, which is based out of the

20     garden department.

21     Q     I take it -- it's sort of obvious, but the date

22     is in the upper right-hand corner?

23     A     Yep.  It would be 07/18 of 07.

24     Q     The time is right below it, correct?

25     A     The time is below along with the register number

1 up above.
2 Q    Where is the store number identifying the store
3 it would have purchased at?
4 A    To the left of the 56 where it says "0279" is
5 the store location and store number.
6 Q    Does this record also reflect or show what form
7 of payment was made for the item?
8 A    Yes.  On the bottom of the receipt right above
9 the authorization code number is debit, which means
10 it was a debit card, and the actual debit card
11 number.
12 Q    Would that be the area I just circled there on
13 the monitor?
14 A    Yes.
15 Q    And, in fact, from your review of these records,
16 were all of these transactions tied to purchases made
17 from that same debit card as this one reflected on
18 Page 3 here?
19 A    Yes.
20 Q    You don't have any personal knowledge about
21 these transactions, correct?
22 A    No personal knowledge other than to pull them
23 up.
24 Q    Now, let me just ask you to quick turn to
25 Government's Exhibit 21 F, which you have there.

1     It's a separate one-page item.
2  A  Um-hum.
3  Q  Let me ask you if you look at that, can you
4     tell, is that actually one page that is part of this
5     41 sort of separate and by itself?  Can you compare
6     the two and see if they match up in any way?
7  A     It would be the second to the last page on
8     Exhibit 41, which would be Transaction Number 9595,
9     register eight, on 08/02 of 07, on 19:53 or 7:53 p.m.
10 Q     Let me find it.  What's the date of the
11    transaction, sir?
12 A     Date of the transaction was 08/02 of 07.
13 Q     And based upon your examination, that page is
14    similar to one of the pages in Government's 41,
15    correct, same page, just one part of it?
16 A     Yes, actually one part of it.
17 Q     Okay.  Is it a similar type of record or
18    document, the same thing, I guess, correct?
19 A     Yes.  It's actually the same exact document.
20        MR. HOFFER:  Your Honor, at this point I'd offer
21    Government's 21 F.
22        MS. DYER:  No objection.
23        THE COURT:  21 F is received on behalf of the
24    United States.
25        (Government's Exhibit No. 21 F is received into

1  evidence.)

2  BY MR. HOFFER:

3  Q   Now, you've told us about the store location.
4  It's the same store, correct?
5  A   Yes, Store 0279, which is on Florida Avenue.
6  Q   Can you tell from the description of the items,
7  from your familiarity with the store and its
8  merchandise, what kind of items were being purchased
9  on this transaction?
10 A   On that transaction looks like a one and an
11 eighth inch dowel rod, which is a wooden dowel rod;
12 one inch by ten foot PVC pipe; a five-eighths inch by
13 36 inch dowel rod; a half inch by ten foot PVC pipe;
14 another five-eighths by 36 dowel rod; an eight ounce
15 hammer.  And a PC 1250 I believe off the top of my
16 head by looking at that was a pipe cutter.
17 Q   When you say a pipe cutter, what do you mean?
18 A   Like a PVC pipe cutter.
19 Q   What kind of -- are you familiar with those
20 devices or items?
21 A   It's a circular pipe cutter that goes around the
22 PVC that actually is able to cut.
23 Q   That debit card number reflected in the lower
24 left-hand corner of the exhibit, is that the same one
25 you were talking about earlier?

1    A    Yes.
2    Q    In fact, you were asked to research that
3    particular debit card for all the transactions you
4    could find over a certain time period, correct?
5    A    Yes.
6    Q    Do you recall how far back you went as far as --
7    A    I actually went back what my system allowed me,
8    which was about two years and that searches it
9    company wide.
10   Q    Did you -- at the time you were asked to make
11   this search, did you also search -- withdraw it.  Let
12   me ask you, this is dated August 2 of 2007.  If you
13   need to refer to Government's 41, I ask you to do so.
14   Did you find any record of any transactions after the
15   date of August 2nd, 2007, in your search?
16   A    No.
17   Q    And were all of them at the same store location
18   you mentioned?
19   A    All of these in Exhibit 41 are made at Store
20   279.
21        MR. HOFFER:  May I have a moment, Your Honor?
22        THE COURT:  You may.
23        MR. HOFFER:  Thank you, Your Honor.  No further
24   questions of this witness.
25        THE COURT:  Thank you, Mr. Hoffer.

1          Has the defense cross-examination for Mr. Weeks?
2          MS. DYER:  Yes, Your Honor.  Thank you.
3          THE COURT:  You're recognized to that are
4    purpose.
5                     CROSS-EXAMINATION
6    BY MS. DYER:
7    Q    Mr. Weeks, I believe you testified that you were
8    asked to pull records for certain transactions, is
9    that correct?
10   A    By certain transactions by debit card, yes.
11   Q    And the videos I believe you testified?
12   A    Correct.
13   Q    Did you pull the videos?
14   A    Yes.
15   Q    Did you provide them to the same law enforcement
16   or agent or person that you provided the transaction
17   histories?
18   A    Yes, I did.
19        MS. DYER:  Thank you, Your Honor.  No further
20   questions.
21        THE COURT:  Thank you, Ms. Dyer.
22        Any redirect examination?
23        MR. HOFFER:  No, Your Honor.  Thank you.
24        THE COURT:  Mr. Weeks, you may step down and you
25   are excused with our thanks.

1     THE WITNESS:  Thank you.
2     (End of excerpt of proceedings.)
3
4              C E R T I F I C A T E
5     I, Kerry Mercade, certify that the foregoing is
6  a correct transcript from the record of proceedings
7  in the above-entitled matter.
8                                    S/Kerry Mercade
9                                    Kerry Mercade
                                     Court Reporter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25