1                   UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
2                       TAMPA DIVISION

3   UNITED STATES OF AMERICA

4

5          vs.               CASE NO. 8:07-cr-342-T-23TBM
                           March 24, 2009
6                           Tampa, Florida

7

   YOUSSEF SAMIR MEGAHED,
8
       Defendant.
9
   _____/
10
         TRANSCRIPT OF EXCERPT OF TRIAL PROCEEDINGS
11       (CONTINUED TESTIMONY OF SHELLY RENSINK)
        BEFORE THE HONORABLE STEVEN D. MERRYDAY
12            UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Government:  JAY HOFFER
                      ROBERT MONK
15                  Assistant U.S. Attorneys
                  400 N. Tampa Street, Suite 3200
16                  Tampa, Florida 33602
                  813/274-6000
17

   For the Defendant:   ADAM ALLEN
18                  DIONJA DYER
                  Assistant Federal Defenders
19                  400 N. Tampa Street, Suite 2700
                  Tampa, Florida 33602
20                  813/228-2715

21   Court Reporter:      Kerry Mercade
                  801 N. Florida Avenue
22                  Suite 15A
                  Tampa, Florida 33602
23                  813/301-5024

24

25   Proceedings recorded and transcribed by
   computer-aided stenography.

1                           INDEX

2
    **GOVERNMENT WITNESS SHELLY RENSINK**
3   Direct Examination by Mr. Hoffer.........3
    Cross-Examination by Ms. Dyer............25
4

5
                    **GOVERNMENT'S EXHIBITS**
6

7      **Number        Description                    Page**

8      11 E        Fingerprint photographs........12
       17 F        Fingerprint photographs........17
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Excerpt of proceedings.)

2     THE COURT:  Ms. Rensink, you of course remain

3     under oath from our proceedings yesterday until

4     you're excused.

5          Mr. Hoffer?

6               DIRECT EXAMINATION CONTINUED

7     BY MR. HOFFER:

8     Q    Ms. Rensink, good morning.

9     A    Good morning.

10    Q    We were talking yesterday about the examination

11    work you did in this case and I'd like to continue

12    along with that path.

13         MR. HOFFER:  If I could approach the witness,

14    Your Honor?

15         THE COURT:  You may.

16    BY MR. HOFFER:

17    Q    Ms. Rensink, I have placed before you a series

18    of exhibits that are in evidence.  They are

19    Government's Exhibit's 4 A, 5 A, 6 A, 7 A, and I

20    guess 8 A.  I think you've got five there all

21    together, correct?

22    A    Yes.

23    Q    My question to you, first, is do you recall from

24    your work in connection with this matter, did you

25    have occasion to examine or analyze these five

1    exhibits in the laboratory for the purpose of

2    attempting to make any sort of fingerprint

3    identification?

4    A    Yes, I did.

5    Q    And how do you know by looking at these items

6    that you have seen them or worked on them previously?

7    A    Each of the sealed bags has my initials on them.

8    Q    Indicating to you that you did what with them?

9    Or what did you do with them I guess would be the

10   question?

11   A    That I received the evidence within the unit and

12   that I conducted examinations on them.

13   Q    As a result of the examinations you -- well,

14   withdrawn.  What type generally, just as generally as

15   you can describe it, what kind of examinations did

16   you do on each of those items?

17   A    In this case these are all non porous items,

18   which, as I mentioned yesterday, means that it

19   wouldn't be typical for something to be absorbed into

20   them.  So I did a visual examination and then an

21   alternate light source, meaning laser/UV, to see if

22   there were any fluorescent or inherent prints that I

23   knew the laser or UV would fluoresce or light up.

24   Then I superglued each of these items.  After that I

25   applied the superglue dye.  Then lastly I applied

1    black powder.

2    Q    As a result of doing all that, were you able to

3    on taken any latent fingerprints that you could work

4    with?

5    A    No.

6    Q    Is that result -- and is that true the same as

7    to each of the five items you have there?

8    A    Yes, that is correct.

9    Q    Does that result of your examination mean in a

10   your opinion, your expert opinion, that these items

11   had never been handled or possessed or touched by

12   anyone necessarily?

13   A    No.  It just means that the conditions that they

14   were handled with were not the conditions that would

15   allow latent prints to be left behind.

16   Q    Would that be for some of the reasons you

17   mentioned yesterday, I believe, in your testimony,

18   the various factors that impact on whether an

19   identifiable fingerprint is left behind or not?

20   A    Yes.

21        MR. HOFFER:  If I could approach the witness

22   again, Your Honor?

23        THE COURT:  You may.

24        Ms. Rensink, you found no latent print from any

25   source whatsoever?

1        THE WITNESS:  Yes.

2        THE COURT:  In other words, there was no known

3   print, no unknown print?

4        THE WITNESS:  Nope.

5        THE COURT:  Since we have a moment, those items

6   are what?  I know them by exhibit number, but what

7   are they?

8        THE WITNESS:  All of them are PVC pipe.

9   BY MR. HOFFER:

10  Q    Let me start with this exhibit.  What I hand you

11  is Government's 14 A.

12       MR. HOFFER:  I have few others with the Court's

13  permission.

14       THE COURT:  Yes, sir.

15  BY MR. HOFFER:

16  Q    I'll hand you 10 A which is received in evidence

17  as well.  And I have a few more.  Let's start with

18  those two for now and I'll try to retrieve the rest.

19       THE COURT:  That's 14 A and 10 A?

20       MR. HOFFER:  Yes, Your Honor.

21  BY MR. HOFFER:

22  Q    Same question, ma'am, looking at those, do you

23  recognize those two items, and, if so, did you do any

24  work with respect to either one of them?

25  A    Yes, I recognize both of them.  They have my

1    initials on them. I was able to examine them and

2    process them for latent prints within my laboratory.

3    Q    Did you use the same general types of processes

4    you've just described or others in you doing your

5    work on these two items?

6    A    Yes.

7    Q    As a consequence of that examination, did you --

8    were you able to detect or find any fingerprints that

9    allowed you to make any sort of identification of any

10    sort?

11    A    No.

12    Q    Again, would that mean necessarily in your

13    expert opinion that either one of those items has

14    never been touched or handled by any person?

15    A    It just means that the conditions may not have

16    been right for somebody to leave a print behind.

17    MR. HOFFER: If I could approach the witness

18    again, Your Honor?

19    THE COURT: You may.

20    BY MR. HOFFER:

21    Q    Ma'am, I've handed you a few more exhibits. For

22    the record I believe they are, correct me if I'm

23    wrong on this: 9 A; I believe I've have handed you

24    13; and I believe I've also handed you Government's

25    11 A. They are exhibits in evidence. Do you have

1    those three items in front of you?

2    A    I actually have 11 B.

3    Q    11 B, I'm sorry.  I think that's correct but let

4    me check, yeah.  Let's address if you would, ma'am,

5    first, the two:  9 A and 13, I guess.  Same question.

6    Do you recall or recognize those, and, if so, from

7    when and what?

8    A    Again, both of these have my initials on them.

9    I received them in evidence within the latent print

10   operations unit and I did have a chance to examine

11   them.

12   Q    Did you use the same sort of processes you've

13   been describing or others with respect to these two

14   items, do you recall?

15   A    Yes.

16   Q    As a consequence, what was the result of your

17   examination?

18   A    I found no useable latent prints on either of

19   these items.

20   Q    When you say "useable latent prints", you mean

21   what?

22   A    There were no latent prints or anything that I

23   could use for comparison purposes that were developed

24   on either of these items.

25   Q    I guess to save time we'll jump to the item I

1    did hand you, which is Government's 11 B, correct?

2    A    Yes.

3    Q    Again, same question, ma'am, do you recognize

4    item, and, if so, from where or what?

5    A    Government's Exhibit 11 B has my initials in the

6    upper, right-hand corner, which means I received this

7    item as evidence within the laboratory.

8    Q    Did you perform any examination work with

9    respect to that exhibit, ma'am?

10   A    Yes.

11   Q    What did you do and what, if anything, were your

12   results or findings?

13   A    The first thing I did as usual was just look at

14   it visually and then with an alternate light source.

15   In this case it's a Black & Decker power inverter box

16   and within the box it had plastic casing.  I actually

17   removed the plastic casing during my examinations,

18   and then I processed item a little bit differently.

19   The box itself is kind of a shiny cardboard, meaning

20   that it's a semi-porous surface where I need to use

21   both the processes that I would use for non porous

22   items and for porous items.  I actually used a few

23   more chemicals on the outside box than the plastic

24   itself.

25   Q    As a consequence of doing that, what, if

1   anything, were you able to determine, if at all, from

2   that?

3   A    I actually developed one latent print for

4   comparison purposes on the inverter box itself and

5   then one latent print on the plastic casing on the

6   inside of the box that could be used for comparison

7   purposes.

8   Q    And did you make a comparison with any known

9   individuals with respect to this matter?

10  A    Yes, I did.

11  Q    Let me hand you, if I could approach again,

12  Exhibits 34 and 35.  I'm just going to hand you

13  Government's 11 A, which is sort of related to 34 and

14  35 as well.  As a consequence, you said you did find

15  one print, you said, on 11 B?

16  A    I found one print on the box part of 11 B and

17  one print on the plastic insert of 11 B.

18  Q    Did you compare that to both Government's 34 and

19  35, the two sets of known fingerprints you described

20  yesterday and have before you now?

21  A    Yes.

22  Q    What were the results in your expert opinion of

23  that comparison?

24  A    The latent print that I detected on Government's

25  Exhibit 11, the outer box or the box part of it, was

1   identified as the latent print appearing in the left

2   middle box on the known prints marked as Government's

3   Exhibit 34, a ten-print card bearing the name Youssef

4   Megahed.

5       The latent print that was developed on the

6   plastic insert in Government's 11 B, I IDed as the

7   right thumb that appears in Government's Exhibit 34,

8   a fingerprint card bearing the name Youssef Megahed.

9   Q    Did you have occasion after doing your

10  examination to record or photograph what you found on

11  that particular Exhibit 11 B there?

12  A    Yes.

13  Q    If I could approach again, I'll hand you what is

14  a composite, I guess, two items, what is marked for

15  identification as Government's 11 E, as in Edward?

16  I'll ask if you recognize that exhibit, and, if so,

17  what is it?

18  A    Yes.  Both of these are photographs of the

19  latent prints that I developed on the box and of the

20  insert and they have my initials on them.

21      MR. HOFFER:  Your Honor, at this point I'd offer

22  Government's Exhibit 11 E, as in Edward.

23      MS. DYER:  No objection.

24      THE COURT:  Exhibit 11 E is received on behalf

25  of the United States.

          1          (Government's Exhibit No. 11 E is received into

          2     evidence.)

          3     BY MR. HOFFER:

          4     Q    If I could just approach again, I will show you

          5     a few more --

          6          THE COURT:  Members of the jury, I know that

          7     sometimes I say that an exhibit is received on behalf

          8     of the United States, and sometimes I say it's

          9     received, and I think I may say it a couple of other

         10     ways.  That's of no moment.  I should say it the same

         11     way every time.  All you need to know is that once a

         12     matter is received into evidence, it's received into

         13     evidence and you may consider it.  It doesn't make

         14     any different who offered it, whether it was the

         15     United States or the defense.  There is no meaning

         16     implied or otherwise to the way I may phrase it.  All

         17     the evidence will be available to you without respect

         18     to who introduced it or when or under what

         19     circumstances.

         20          To the extent that there are any exceptions to

         21     that, I will tell you explicitly by giving you an

         22     instruction as I am now what that limitation is, if

         23     there is one.  I don't know that there will or won't

         24     be, but if there is you'll hear from me about it.

         25     Otherwise, evidence that is admitted is admitted as

1    to each party and for all purposes.

2         Mr. Hoffer?

3         MR. HOFFER:  May I approach the witness again,

4    Your Honor?

5         THE COURT:  You may.

6    BY MR. HOFFER:

7    Q    Ma'am, I have placed before you two additional

8    exhibits that are marked only for identification.

9    Those are Government's, I think, 17 C, as in Charles,

10   and 17 D, as in David.  Do you have those two items

11   there in front of you?

12   A    Yes.

13   Q    And the same question, ma'am, do you recognize

14   those items, first of all?

15   A    Yes, both of these were received within my unit.

16   Q    Did you do any work with respect to either one

17   of those two exhibits?

18   A    Yes.  I did the normal routine processing and

19   examination I would to try to detect latent prints on

20   an item.

21   Q    As a consequence -- again, this may be a

22   different type of substance or material.  Did you do

23   anything different or any different process when you

24   examined either one of these two items?

25   A    Both of these are car seat boxes.  They have a

1    plastic outside and then they had a cardboard insert.

2    I processed them very similarly to the inverter box,

3    or Government's 11 B that I talked about, where I

4    separated the two.

5        Additionally, one of the two boxes had some

6    tape on the outside and I removed the tape and then

7    processed the tape separately.  Because on the

8    adhesive side of tape, often fingers are stuck to it.

9    When you remove the finger from an adhesive surface,

10   you may take away or leave something behind.  We

11   actually have a special process where we paint on

12   kind of a black substance on the tape and then rinse

13   it away.  If there is latent print behind, it will

14   help us detect it or visualize it.

15   Q    As a consequence of that examination and

16   processing, did you discover any fingerprints of

17   value to you that you could use for purposes of

18   identification?

19   A    On Government's Exhibit 17 C, I developed two

20   latent prints that could be used for comparison

21   purposes.

22        And on Government's Exhibit 17 D, I developed

23   five latent prints that could be used for comparison

24   purposes.

25   Q    Did you then take those -- so a total of how

1    many for both of those exhibits, identifiable prints

2    of value to you?

3    A    Seven.

4    Q    Of those seven, did you then compare those seven

5    that you found on those two exhibits, 17 C and 17 D,

6    and compare them, first of all, to the two

7    fingerprint cards you have there, Government's 34 and

8    35?

9    A    Yes.

10   Q    As a consequence of that comparison and

11   examination, what is your expert opinion with respect

12   to any comparison of those prints to the perch who

13   made either one of those two known cards?

14   A    One of the latent prints that I detected on

15   Government's Exhibit 17 C was identified with that of

16   the right ring finger appearing in Government's

17   Exhibit 4, a fingerprint card bearing the name

18   Youssef Megahed.

19        On Government's Exhibit 17 D, one of the latent

20   prints that was developed was identified with that of

21   the right index finger appearing on Government's

22   Exhibit 34, a fingerprint card bearing the name

23   Youssef Megahed.

24   Q    What about the other five?  Did you make any

25   match comparison for the other five?

1    A    I was unable to identify the other five.

2    Q    Again, does that mean in your expert opinion

3    that the other five were not made by the person who

4    made either Number 34 or Number 35?  Is that what

5    that means?

6    A    Yes.

7    Q    Did you take photographs of the two prints that

8    you were able to identify that you've just described

9    second ago off of Government's 17, I guess one was

10   off of C and one was off of D?

11   A    Yes.

12   Q    Did you take photographs of those?

13   A    Yes.

14   Q    If I could approach and show the witness what

15   has been marked for identification as composite

16   Government's 17 F, as in frank.  The question is do

17   you recognize that exhibit, and, if so, ma'am, what

18   is it?

19   A    These are photographs of one of the developed

20   latent prints for Government's Exhibit 17 C and 17 D.

21   And they both have my initials on them.

22        MR. HOFFER:  Your Honor, at this point I would

23   offer Government's 17 F.

24        MS. DYER:  No objection.

25        THE COURT:  17 F is received.

```
 1        (Government's Exhibit No. 17 F is received into
 2   evidence.)
 3   BY MR. HOFFER:
 4   Q    So that's it's clear for future purposes,
 5   perhaps, are those photographs of the two different
 6   prints or one is from 17 C and one is from 17 D?
 7   A    Yes.
 8   Q    Could you perhaps, ma'am -- I don't know if you
 9   need a pen or a writing instrument up there -- on the
10   back or somewhere on each of the photographs affix
11   just "17 C" to the one that relates to that exhibit
12   and "17 D" to the one that relates to that?  Can you
13   do that?
14   A    If I'm given something to write with.
15        MR. HOFFER:  May I, Your Honor?
16        THE COURT:  You may.
17        THE WITNESS:  You said on the back?
18        MR. HOFFER:  On the back, please, if it will
19   work.
20        THE WITNESS:  (Witness complied.)
21   BY MR. HOFFER:
22   Q    I didn't ask you about it but I think you have
23   it there already, Government's 11 A?
24   A    Yes.
25   Q    Did you do any work on that, and, if so, could
```

1    you tell the members of the jury what work you did

2    and what you found?

3    A    Government's 11 A is a Black & Decker inverter

4    and it has my initials on the backside.  This is a

5    non porous item, so I went through the processing for

6    non porous, which was simply starting with a visual

7    and laser alternate light source exam.  I superglued

8    the item, then I added superglue dye to it.  Lastly,

9    I powdered it.  In this case I actually used white

10   powder because the majority of the item was black so

11   that I would have a better contrast.

12   Q    As a consequence -- or at the conclusion of

13   doing all that, what, if anything, did you find as

14   far as helping you with an identification?

15   A    There were no useable latent prints that were

16   developed on Government's Exhibit 11 A.

17   Q    Again, let me ask you a question.  Would that

18   mean in your expert opinion that that item had never

19   been handled or touched by anyone?

20   A    No.

21   Q    Why not?

22   A    Depending on the conditions of the environment,

23   where this was handled, it may just not have been

24   receptive or the right conditions for a latent print

25   to be left behind.

1  Q    Let me ask you, Ms. Rensink, you mentioned

2  yesterday, and without going through the litany, you

3  said there were a number of factors that could affect

4  how a person touching an item might or might not

5  leave a latent print that you could then discover

6  later on.  Do you recall all that?

7  A    Yes.

8  Q    You mentioned physiology and you mentioned

9  something about atmospherics and wiping things down.

10  Does friction play a part in that, friction against

11  the surface on which a print might have been left?

12  Does have something to do with any of this?

13  A    Friction works just like wiping down a surface.

14  A surface that comes in contact with another one,

15  works in almost a wiping manner.  It is similar to

16  wiping an item where it can destroy a latent print

17  because of the fragileness of a latent print.

18  Q    Let me ask you, how about washing or rinsing or

19  water applied to surfaces, how would that impact?

20  A    There are two types of substances that can coat

21  friction ridges.  Some are water soluble and some are

22  not water soluble.  If it is perspiration that's left

23  behind, perspiration is mostly water.  The components

24  in it will be diluted or washed away if water is

25  poured on that item or it's merged in water.

1          The oils that you pick up from your skin or your

2     hair, those aren't actually affected by water.  They

3     don't dissolve in water.  It's like when oil and

4     water mix.  They don't effect each other; they

5     actually separate out.  So depending on what was left

6     behind, water may or may not affect the latent print

7     stain or that substance stain on the surface.

8     Q     Would the nature of an item on which

9     fingerprints might be left, and by that I mean

10    something wood as opposed something glass or

11    something metallic, how do those impact on that

12    process?

13    A     The surfaces, depending again on if they are

14    more of absorbant surface or a more non absorbant

15    surface can have an impact.  Wood is very absorbant.

16    It's much like cloth where if you leave anything on

17    it or a latent print is left behind, the material is

18    often absorbed into it.  What it does is almost

19    diffuse the latent print so that it's not always easy

20    to visualize.  Whereas, something that's a metallic

21    or a glass-type surface, it does not absorb that

22    latent print.  Once it's touched, as long as there is

23    no friction or anything wiping it away, it's

24    typically preserved on that surface.

25    Q     I have one other item I wish to show you, if I

1    could approach one more time?

2        THE COURT:  You may.

3    BY MR. HOFFER:

4    Q    I have shown you or placed before you a series

5    of exhibits and I hope I can remember.  Maybe perhaps

6    you could read off the numbers of the exhibits I've

7    just handed you because I can't remember them.

8    A    Exhibit 21 A; 21 B, as in boy; 21 D, as in

9    David; then 20 C; and 19.

10   Q    Right.  I'm missing 21 C for the moment.  Let me

11   ask you of those five items I've handed you, have you

12   done any work on them or do you recognize them from

13   your laboratory?

14   A    Yes.  All of them have my initials on them and

15   were received in the lab for latent print

16   examination.

17   Q    As a consequence of the work you did with

18   respect to each and every one of those five items you

19   just mentioned, let me ask you if you were able to

20   develop any sort of fingerprints that were of value

21   or aid to you in making any sort of identification?

22   A    I detected no latent prints for comparison

23   purposes.

24   Q    Again, when you say that you mean what, please?

25   A    I mean that there were no latent prints that

1      were left behind that could be compared or gone

2      through the process where I can compare them to known

3      prints or Government's Exhibits 34 or 35.

4      Q    Is that because, as you explained yesterday if I

5      get this right, there wasn't enough of a print or

6      enough to make a comparison or what?

7      A    It means that the conditions weren't right to

8      leave enough of a latent print behind for comparison

9      purposes.

10     Q    Do you recall was there one more similar item to

11     the wooden items in 21 A, B, D?  C is sort of missing

12     somewhere.  Do you recall did you see four of them in

13     total?

14     A    Yes.

15     Q    Was your examination results any different for

16     the fourth one that's not up there right now?

17     A    No.

18          MR. HOFFER:  If I could have a moment, Your

19     Honor?

20          THE COURT:  You may.

21     BY MR. HOFFER:

22     Q    One or two questions, ma'am.  I just want to

23     make sure.  I don't know if you talked about this

24     yesterday.  You mentioned, or did you, about gloves

25     or other things on the hands that would interfere

1   with fingerprints?

2   A    Yes.

3   Q    Is it just gloves or other things would serve

4   the same purpose or could serve that same function?

5   A    Typically gloves are one of the easiest ways to

6   keep from leaving fingerprints behind.  Washing your

7   hands a lot can; dry skin can.  Anything that can be

8   used as a surface or barrier between your fingers and

9   hands and an item can be used.

10  Q    We classically hear about gloves, but in your

11  experience what other kinds of things would serve

12  that purpose as far as a barrier that's an actual

13  item?  Have you seen other things that function the

14  same way?

15  A    Not to my knowledge.  But I would assume a rag

16  or a towel, anything that could work as a barrier

17  could be used.

18  Q    If I could approach one more time and show you

19  what's actually been marked and received in evidence

20  as Government's 79.  I would put the same question to

21  you, ma'am, whether you've seen that item before and

22  recognize it?

23  A    Yes, I do recognize it.

24  Q    Did you perform any examination work on that

25  item, Government's 79?

1    A    Yes, I did.

2    Q    As a consequence of performing that examination,

3    were you able to determine or lift, I guess, or

4    perceive any fingerprints of value that would allow

5    you to make an identification?

6    A    On one of the PVC pipes marked as Government's

7    Exhibit 79, I did develop one latent print that was

8    useable for comparison purposes.

9    Q    Did you compare that to both the prints

10   contained in the known print cards in Government's

11   Exhibit 34 and 35?

12   A    Yes.

13   Q    Did you make a match as to either one of those

14   sets of prints?

15   A    No.  The print was not left by either the

16   fingerprints -- the fingerprints appearing in

17   Government's 34 or 35.

18        MR. HOFFER:  Thank you, Your Honor.  I have no

19   further questions of this witness at this point.

20        THE COURT:  Thank you, Mr. Hoffer.

21        Has the defense cross-examination for Ms.

22   Rensink?

23        MS. DYER:  Yes, Your Honor.

24        THE COURT:  Ms. Dyer, you are recognized for

25   that purpose.

1                    CROSS-EXAMINATION

2    BY MS. DYER:

3    Q    Good morning, ma'am.

4    A    Good morning.

5    Q    You have testified about a lot of items that you

6    performed analysis on in this case.  There's a lot

7    more items that you performed analysis on as far as

8    fingerprints that you haven't testified about, isn't

9    that correct?

10   A    Yes.

11   Q    And one of those items was a plastic bag.  At

12   the same time that you were asked to test I believe

13   it was Government's 20 B, the GPS box, you were also

14   asked to analyze a plastic bag.  I believe it was

15   your Q9.2.  Do you remember that?

16   A    Yes.

17   Q    And you were able to get a latent print off of

18   that plastic bag, correct?

19   A    I developed three latent prints off of the

20   plastic bag that we had labelled Q9.2.

21   Q    Were you able to match that to either

22   Government's Exhibit 34 or 35, the known prints in

23   this case?

24   A    Yes, I was.

25   Q    How many of these three prints?

1    A    All three of them.

2    Q    And who did they match?

3    A    They were identified as the right middle, right

4    ring, and left index fingers appearing on

5    Government's Exhibit 35, a ten-print card bearing the

6    name Ahmed Mohamed.

7    MS. DYER:  Thank you.  No further questions,

8    Your Honor.

9    THE COURT:  Thank you, Ms. Dyer.

10    Mr. Hoffer, any redirect examination?

11    MR. HOFFER:  No, Your Honor.  Thank you.

12    THE COURT:  In that case, Mr. Rensink, you may

13    step down and you are excused with our thanks.

14    THE WITNESS:  Thank you.

15    (End of excerpt of proceedings.)

16

17               C E R T I F I C A T E

18    I, Kerry Mercade, certify that the foregoing is

19    a correct transcript from the record of proceedings

20    in the above-entitled matter.

21                     S/Kerry Mercade

22                     Kerry Mercade
                        Court Reporter

23

24

25