1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
2                      TAMPA DIVISION

3     UNITED STATES OF AMERICA

4

5          vs.                CASE NO. 8:07-cr-342-T-23TBM
                              March 24, 2009
6                             Tampa, Florida

7

      YOUSSEF SAMIR MEGAHED,
8
            Defendant.
9
      _____/
10
              TRANSCRIPT OF EXCERPT OF TRIAL PROCEEDINGS
11                  (TESTIMONY OF RYAN GAMMONS)
              BEFORE THE HONORABLE STEVEN D. MERRYDAY
12                UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14    For the Government:   JAY HOFFER
                            ROBERT MONK
15                          Assistant U.S. Attorneys
                            400 N. Tampa Street, Suite 3200
16                          Tampa, Florida 33602
                            813/274-6000
17
      For the Defendant:   ADAM ALLEN
18                          DIONJA DYER
                            Assistant Federal Defenders
19                          400 N. Tampa Street, Suite 2700
                            Tampa, Florida 33602
20                          813/228-2715

21    Court Reporter:      Kerry Mercade
                           801 N. Florida Avenue
22                         Suite 15A
                           Tampa, Florida 33602
23                         813/301-5024

24

25    Proceedings recorded and transcribed by
      computer-aided stenography.

1                         **INDEX**

2
**GOVERNMENT WITNESS RYAN GAMMONS**
3    Direct Examination by Mr. Hoffer..........3
     Cross-Examination by Ms. Dyer.............7
4

5
                    **GOVERNMENT'S EXHIBITS**
6

7    **Number        Description                    Page**

8    23             Megahed's wallet and contents...6

9
                    **DEFENDANT'S EXHIBITS**
10
     1 B           Brochure (Pennekamp Park).......8
11   35             Receipt (Shoot Straight)........8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          GOVERNMENT WITNESS, RYAN GAMMONS, SWORN

2          THE COURT:  State your name, please.

3          THE WITNESS:  Ryan Gammons.

4          THE COURT:  G-A-M-M-O-N-S?

5          THE WITNESS:  Correct.

6          THE COURT:  Please have a seat in the witness

7    stand and I will recognize Mr. Hoffer for your Direct

8    Examination.

9                    DIRECT EXAMINATION

10   BY MR. HOFFER:

11   Q     Mr. Gammons, sir, good afternoon.

12   A     (Witness indicated.)

13   Q     Please tell the members of the jury by whom you

14   are employed and what you do for a living, sir?

15   A     Currently or at the --

16   Q     Currently.

17   A     I am currently a youth director of Cathedral of

18   Praise, a church in Charleston, South Carolina.

19   Q     How long have you worked in that capacity?

20   A     Since October of 2007.

21   Q     Let me direct your attention back to August of

22   2007 and September of 2007, that time period.  Where

23   are you working somewhere else at that time?

24   A     Yes.

25   Q     Where were you working and what did you do for a

1   living then?

2   A    I was a Special Agent with the FBI.

3   Q    How long or when did you join the FBI initially,

4   sir?

5   A    I was with them for about four years, so that

6   would have been 2003 is when I started, around

7   September of 2003.

8   Q    And in August of 2007, specifically August 7th,

9   if you recall of that year, were you assigned do some

10  work connected with the investigation of the case now

11  on trial before this court?

12  A    Yes.

13  Q    Do you recall where you went and what you did on

14  that specific day?

15  A    I went out to I believe it was the Berkeley

16  Police Department to pick up a wallet.

17  Q    Did you meet with anybody at -- would it be the

18  Berkeley County Sheriff's Office, would that be it?

19  A    Yes.  One of the detectives.

20  Q    Do you recall the name of the person you met

21  there?

22  A    No, I don't.

23  Q    Would you have -- well, would you have anything

24  that might refresh recollection on that?

25  A    Yes.  Do you have my report from that day?

1      MR. HOFFER:  May I approach witness, Your Honor?

2      THE COURT:  You may.

3   BY MR. HOFFER:

4   Q    Sir, I've handed you two things.  One is

5   Government's Exhibit 23 for identification and the

6   other is a document which I'd like you to just read

7   to yourself or do not read aloud or anything.  Does

8   that document help refresh your recollection with

9   respect to who you met on that date?

10  A    Yes.  I met with Detective Phillip Muckelvaney

11  (ph).

12  Q    Did you obtain anything from that detective on

13  that date?

14  A    Yes, a wallet.

15  Q    What did you do with the item or items that you

16  received on that day?

17  A    I picked it from him, brought it back to the

18  office, placed photo copies of the contents, and

19  submitted it into our evidence department.

20  Q    Now, I've handed you Government's Exhibit Number

21  23.  Do you recognize that item in and the contents

22  of it?

23  A    Yes, that's the wallet.

24  Q    How do you know that that's the wallet and the

25  contents?  What tells you that?

1    A     I just recall picking up this wallet and my 302.

2    Or my -- sorry.

3    Q     Your report?

4    A     My FD-302, the report.

5          MR. HOFFER:  Your Honor, at this point I would

6    offer Government's Exhibit 23.

7          MS. DYER:  No objection.

8          THE COURT:  Exhibit 23 is received on behalf of

9    the United States.

10         (Government's Exhibit No. 23 is received into

11   evidence.)

12   BY MR. HOFFER:

13   Q     Simply, after you got the contents of that, you

14   said you brought it back to the office or your

15   office.  Where was your office located at that time?

16   A     Charleston, South Carolina.

17   Q     What did you do with it at that point or what

18   happened to it then?

19   A     I turned it over to our evidence custodian.

20   Q     At the time in your office where you worked, did

21   they have a system for maintaining the integrity and

22   the security of the evidence they received?

23   A     Yes, the chain of custody.

24   Q     And did that apply to this exhibit as well?

25   A     Yes.

1        MR. HOFFER:  Thank you, Your Honor.  I have no

2    further questions of this witness at this point.

3        THE COURT:  Thank you, Mr. Hoffer.

4        Any cross-examination by the defense for Mr.

5    Gammons?

6        MS. DYER:  Just briefly, Your Honor.

7                     CROSS-EXAMINATION

8    BY MS. DYER:

9    Q    Mr. Gammons, when you went to the Berkeley

10   County Sheriff's Office on August 7th, 2007, did you

11   also receive some other items out of the Toyota that

12   was impounded there?

13   A    Yes.

14       MS. DYER:  If I may approach, Your Honor?

15       THE COURT:  You may.

16   BY MS. DYER:

17   Q    I'm showing you what's been previously marked

18   for identification as Defense Exhibit 1 B and 35.

19   Will you look at those, please?

20   A    Yes.  And let me clarify, these were in two

21   separate locations.  The impound lot was separate

22   from where I picked up the wallet.

23       THE COURT:  You said the impound -- I didn't

24   hear you, sir.  You said the impound what?

25       THE WITNESS:  Yeah, the car was in a separate

1    location from where the detective's office was.

2         THE COURT:  I see.

3         THE WITNESS:  Where I retrieved these from.

4    BY MS. DYER:

5    Q    How do you recognize those?

6    A    These were taken out of the car that day.

7         MS. DYER:  Your Honor, I'd ask to move into

8    evidence Defense Exhibits 1 B and 35.

9         MR. HOFFER:  May I see the items, Your Honor?

10        THE COURT:  You may.

11        MR. HOFFER:  No objection, Your Honor.

12        THE COURT:  Exhibits 1 B and 35 are received on

13   behalf of the defense.

14        (Defendant's Exhibit Nos. 1 B and 35 are

15   received into evidence.)

16        MS. DYER:  May I publish, Your Honor?

17        THE COURT:  You may.

18   BY MS. DYER:

19   Q    Sir, I'm showing you what's now been admitted as

20   Defense 1 B.  This is a pamphlet from a state park in

21   Key Largo, Florida, correct?

22   A    Correct.

23   Q    And now I'm showing you what's been admitted as

24   Defense 35.  This is a receipt from a Shoot Straight

25   Firing Range in Tampa, Florida, correct?

1    A    Correct.

2    Q    And the date is July 19th, 2007, correct?

3    A    Correct.

4    Q    And there is a purchase for some .22 caliber

5    bullets, correct?

6    A    Correct.

7         MS. DYER:  Thank you, Your Honor.  No further

8    questions.

9         THE COURT:  Thank you.

10        Any redirect examination by the United States?

11        MR. HOFFER:  No, Your Honor.  Thank you.

12        THE COURT:  In that case, Mr. Gammons, you may

13   step down and you are excused to return to Charleston

14   with our thanks.

15        (End of excerpt of proceedings.)

16

17              C E R T I F I C A T E

18        I, Kerry Mercade, certify that the foregoing is

19   a correct transcript from the record of proceedings

20   in the above-entitled matter.

21                              S/Kerry Mercade

22                              Kerry Mercade
                                Court Reporter
23

24

25