1          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
2                 TAMPA DIVISION

3    UNITED STATES OF AMERICA

4

5          vs.              CASE NO. 8:07-cr-342-T-23TBM
                            March 25, 2009
6                           Tampa, Florida

7

     YOUSSEF SAMIR MEGAHED,
8
          Defendant.
9
     _____/
10
           TRANSCRIPT OF EXCERPT OF TRIAL PROCEEDINGS
11                (TESTIMONY OF CAREN ALLEN)
           BEFORE THE HONORABLE STEVEN D. MERRYDAY
12               UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Government:   JAY HOFFER
                           ROBERT MONK
15                         Assistant U.S. Attorneys
                           400 N. Tampa Street, Suite 3200
16                         Tampa, Florida 33602
                           813/274-6000
17
     For the Defendant:    ADAM ALLEN
18                         DIONJA DYER
                           Assistant Federal Defenders
19                         400 N. Tampa Street, Suite 2700
                           Tampa, Florida 33602
20                         813/228-2715

21   Court Reporter:       Kerry Mercade
                           801 N. Florida Avenue
22                         Suite 15A
                           Tampa, Florida 33602
23                         813/301-5024

24

25   Proceedings recorded and transcribed by
     computer-aided stenography.

1                          **INDEX**

2
**GOVERNMENT WITNESS CAREN ALLEN**
3  Direct Examination by Mr. Hoffer..........3
Cross-Examination by Ms. Dyer.............16
4  Redirect Examination by Mr. Hoffer........22

5

6                    **GOVERNMENT'S EXHIBITS**

7
     **Number      Description                  Page**
8
     39 A - B   Bank of America records.......8
9    40 A       USF Credit Union records......8
     43         Summary of purchases..........9, 10
10   70         Bank of America records.......8
     72         Bank of America records.......8
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              GOVERNMENT WITNESS, CAREN ALLEN, SWORN
 2         THE COURT:  State your name, please.
 3         THE WITNESS:  Caren Allen.
 4         THE COURT:  Spell both Caren and Allen.
 5         THE WITNESS:  Caren, C-A-R-E-N; Allen,
 6    A-L-L-E-N.
 7         THE COURT:  Please have a seat in the witness
 8    chair and I'll recognize Mr. Hoffer for your Direct
 9    Examination.
10                   DIRECT EXAMINATION
11    BY MR. HOFFER:
12    Q    Ms. Allen, good morning.
13    A    Good morning.
14    Q    If you would just please the members of the jury
15    by whom you are employed and what you do for a
16    living, ma'am?
17    A    I work to the Florida Department of Law
18    Enforcement as a Government analyst.
19    Q    How long have you worked for the Florida
20    Department of Law Enforcement?
21    A    Almost 11 years.
22    Q    In your current position -- first of all, where
23    do you work?  What's your duty assignment?
24    A    I'm assigned -- well, until the last week I was
25    assigned to the Regional Domestic Task Force, which
```

1    is co-located with the Joint Terrorism Task Force in

2    the --

3         THE COURT:  Ms. Allen, all these terms are

4    familiar to you and you can say them with ease and

5    quickly, but I'm actually trying to hear each one of

6    them and the reporter is trying to make a report of

7    it.  Let me ask you to speak just a little bit more

8    deliberately.

9         THE WITNESS:  Excuse me, Judge.  I'm with the

10   Regional Domestic Security Task Force and we are

11   co-located at the FBI with the Joint Terrorism Tack

12   Force.

13   BY MR. HOFFER:

14   Q    Ms. Allen, if your position what kinds of things

15   do you do?  In other words, what are your duties and

16   responsibilities?

17   A    I'm a tactical analyst, which means that I

18   receive information or intelligence, collect it,

19   collate it into an organized fashion, validate it,

20   analyze it, and then disseminate it appropriately.

21   Q    How long have you done that kind of work?  For

22   the whole 11 years you have been with FDLE?

23   A    Yes, sir.

24   Q    What did you do before joining FDLE?

25   A    I worked in banking for eight years.

1    Q    As a consequence and from that you have some

2    familiarity with banking records and those kinds of

3    things as well, is that fair to say?

4    A    Yes, sir.

5    Q    Now, in connection with the matter presently on

6    trial before this court, Ms. Allen, were you called

7    upon at some point prior to today certainly to do

8    some work along the lines you've have mentioned, the

9    gathering of evidence, collating, and sort of

10   organizing it?

11   A    Yes.

12   Q    Generally speaking, do you recall, first of all,

13   around when it was you became involved or were asked

14   to become involved in the investigation relating to

15   this matter?

16   A    Yes, sir.

17   Q    When was that?

18   A    I received a phone call on August 5th of 2007.

19   Q    Okay.  So early on.  And you did some work from

20   then on.  And did you continue to work on it for any

21   extended period of time?

22   A    Yes, sir, until today.

23   Q    And generally speaking, the collation of data or

24   work that you did -- I'm assuming that's what it was.

25   Is that along the lines of the work you did?

1    A    Yes.

2    Q    What type of data or material did you collect or

3    were you working with?

4    A    I collected all of the records of purchases from

5    Wal-mart and Home Depot.

6    Q    And as a consequence of collecting all of that

7    data, did you then do some work with it and create

8    some final product relating to your activities?

9    A    Yes.  I put it into an Excel spreadsheet for

10    manageability.

11    MR. HOFFER:  If I may approach the witness, Your

12    Honor?

13    THE COURT:  You may.

14    BY MR. HOFFER:

15    Q    Ms. Allen, I have placed before you a document

16    which is marked for identification as Government's

17    Exhibit 43.  I ask you, first of all, if you

18    recognize that particular exhibit?

19    A    Yes.  That's my spreadsheet.

20    Q    And who prepared that?

21    A    I did.

22    Q    What materials did you -- generally speaking,

23    what types of materials did you use to help prepare

24    that particular exhibit?

25    A    I used the information I received from Wal-mart

```
 1    on purchases based on the subject's credit card,

 2    debit card, and shopping card numbers.

 3    Q     Did you also make use of any bank information or

 4    records?

 5    A     Yes.

 6    Q     Generally speaking, the information you utilized

 7    to help prepare or create that Exhibit 43, were the

 8    banking records and the Wal-mart records related to

 9    any specific person or persons?

10    A     Yes.

11    Q     Who were the individual or individuals they

12    related to?

13    A     Youssef Megahed and Ahmed Mohamed.

14          MR. HOFFER:  Your Honor, at this time, I'm going

15    to offer 43, but before I do I think as preliminary

16    matter I have other exhibits which I would offer.

17    Specifically, they are pursuant to 803(6):

18    Government's 39 A and 39 B, Government's 40 A,

19    Government's 70 and 72.

20          THE COURT:  I take it you are not at this moment

21    offering 43, but you're offering 39 A and B --

22          MR. HOFFER:  I think as a preliminary matter I'm

23    offering these first.

24          THE COURT:  -- 40 A, 70, and 72?

25          MR. HOFFER:  That's correct, Your Honor.
```

1    MS. DYER:  No objection, Your Honor.

2    THE COURT:  Each of 39 A and 39 B, 40 A, 70, and

3  72 is received.

4    (Government's Exhibit Nos. 39 A and B, 40 A, 70,

5  and 72 are received into evidence.)

6  BY MR. HOFFER:

7  Q    If I could approach the witness and just hand

8  these to you, Ms. Allen.  I would just ask you:  In

9  the course of preparing that Exhibit 43, did you have

10  occasion to obtain those documents I've just handed

11  you, which are the ones just received, and use them

12  in the course of the preparation of Government's 43?

13  A    Yes.

14  Q    If I may approach again, I'm sorry.  There is

15  two other -- I'm going to hand you Government's

16  Exhibit 38 and -- I can't find it at the moment, but

17  I think here it is, yes, Government's Exhibit 41.

18  Ask you the same question, did you have occasion, Ms.

19  Allen, to use those two exhibits in the course of

20  your work in creating Government's Exhibit 43?

21  A    Yes, sir.

22  Q    Did you rely upon any other information or was

23  that sort of the sum total of the data you utilized

24  in preparing Government's 43?

25  A    This is it.

1          MR. HOFFER:  Your Honor, at this point I would

2     offer Government's Exhibit 43.

3          MS. DYER:  No objection.

4          THE COURT:  I haven't seen Government's Exhibit

5     43.  Is it a 1001 exhibit?

6          MR. HOFFER:  It's a summary exhibit, Your Honor.

7          THE COURT:  All right.  It's received without

8     objection.

9          (Government's Exhibit No. 43 is received into

10     evidence.)

11          THE COURT:  Members of the jury, I take it that

12     Exhibit 43 is a summary, so let me just say to you

13     that the contents of a lengthy document or other

14     voluminous material of many different kinds can be

15     presented in court in the form of a summary,

16     including summary testimony or a summary chart of

17     some convenient presentation of information that is

18     contained elsewhere in the record.  However, a

19     summary exhibit or summary testimony by a witness and

20     any chart or other summary that accompanies the

21     testimony is received in evidence only for the

22     purpose of more readily displaying facts are that

23     disclosed by other testimony or other evidence

24     admitted into evidence in the case.  The summary, in

25     other words, is not itself evidence or proof of any

1    fact.  The summary is merely a means of more simply

2    and conveniently presenting and explaining some other

3    more voluminous material in the case.  So if a chart

4    or summary does not correctly state facts established

5    by the other evidence in this case, that is, if the

6    they lack a sound foundation in the evidence

7    elsewhere, you should disregard them in whole or in

8    part to the extent that they are unsupported by other

9    evidence.

10        Subject to that instruction, Exhibit 43 is

11    received.  And you are recognized, Mr. Hoffer, to

12    resume your Direct Examination.

13        (Government's Exhibit No. 43 is received into

14    evidence.)

15    BY MR. HOFFER:

16    Q    Ms. Allen, I'm going to publish if we could

17    parts of this exhibit.  If we could have the lights?

18    Thank you.  I'm going to focus in just a little bit.

19        Ms. Allen, I've placed on the screen and you

20    have there Page 1 of Government's Exhibit 43.  If you

21    would, tell us generally speaking what -- you've

22    mentioned -- the caption maybe says it all, but tell

23    us what you're trying to portray in this spreadsheet

24    and how you did that.

25    A    I took all the purchases from Wal-mart and Home

1    Depot that were identified and I compiled them into
2    one spreadsheet for manageability.  This particular
3    spreadsheet is sorted in date order, chronologically
4    in descending order.  So it starts with the 4th of
5    April, 07, and the times go from the latest part of
6    the day to the earlier.
7    Q    You just said 4th of April.  Did you mean to say
8    that?
9    A    Excuse me, the 4th of August, 2007.
10   Q    Thank you.  So you begin in descending
11   chronologic order.  The first entry is not the
12   earliest of the day, it is the latest of the day?
13   A    Correct.
14   Q    And it goes downward.  Then it continues to the
15   next day?
16   A    Correct.
17   Q    And some preceding days.  Now, could you just --
18   it's somewhat obvious, but perhaps you could tell us
19   about each column and what each column represents
20   that you incorporated into this exhibit?
21   A    The first column, Column A, is the date; B is
22   the time; C is where the purchase was made.  It's
23   either going to be Wal-mart or Home Depot.  Column D
24   represents the store number, which will identify the
25   location of the store.  Column E is the item that was

1    purchased.  Column F is the retail price, which is

2    what the item sales for without sales tax.  And

3    Column G is the visit type:  Was it a sale?  Was it a

4    return?  Column H is the subject that purchased or

5    returned the item.  And Column H (sic) is the method

6    of payment:  Whether it's a gift card; a shopping

7    card, it's also called; a debit card or a credit

8    card.  It identifies that particular card by the last

9    four digits of -- that are on the cards themselves.

10   Q    Now, I take it you relied heavily in preparing

11   this upon the records from Wal-mart in Government's

12   38, I think, and the records from Home Depot in

13   Government's 41, is that correct?

14   A    Yes, sir.

15   Q    Other than those two retailers, are transactions

16   or purchase or returns of any sort from any other

17   retailer or source reflected on this particular

18   exhibit?

19   A    No.

20   Q    And the description of the item that you have in

21   Column E, where did you derive that from?

22   A    From the records from the retailer itself.

23   They're basically pulled from the UPC code, which is

24   the universal product code.

25   Q    Did you also receive the store sort of customer

1    receipts that you could see the description printed

2    out?

3    A    Yes.  On most of the items the receipts, the

4    actual copies of the receipts were available.

5    Q    Column D is the store number.  Is there at some

6    point in this document a legend which lists all the

7    location of the various stores mentioned?

8    A    Yes.  It's on Page 16.

9    Q    The last page.  Again, did you rely upon

10   business records or data from the Home Depot folks

11   and Wal-mart to prepare that last section of Page 16

12   there?

13   A    Yes, I did.

14   Q    So one could flip to the back, compare the

15   number, and determine where the store was?

16   A    Correct.

17   Q    So just -- if I read you correctly, for example,

18   and I want you to just verify, there is a purchase on

19   Line 29 reflecting a Garmin C330 as your description

20   and you have the retail price there as what?

21   A    The retail price is $288.84, and that would be

22   without sales tax.

23   Q    That you identified from the records as being a

24   purchase from by source and whose payment?

25   A    That was made by Mr. Megahed using his debit

1    card that ends in 1506, which goes back to a Bank of

2    America account.

3    Q    In fact, is the bank records that relate to that

4    account also contained in one of the exhibits you

5    have there in front of you?

6    A    Yes, sir.

7    Q    Do you see which one it is or do you -- if it's

8    there.  I'm not sure it is there.

9    A    I'm going to have to refer to my legend.

10    Q    Okay.

11    A    Yes, it is.  It's Exhibit 39 A.

12    Q    And the reason it's not -- it wasn't exactly

13    obvious to you in looking at the two, is there some

14    reason why it's not so obvious?

15    A    Yes.  Because the last four digits of the debit

16    card are not the last four digits of the account

17    number, and they're not directly reflected on the

18    statement.

19    Q    Does actually Government's Exhibit 72 help you

20    tie that together?  It's the one-page document you

21    have there before you on the stand.

22    A    Yes, sir.

23    Q    And I take it that the analysis or the

24    representations on the various components up here of

25    43 are the same, you can read the lines across and

1    they reflect the same information, and the same sort,

2    same type?

3    A    Yes, sir.

4    Q    So that, for example, if you looked at Page 2, I

5    guess it is, of -- just to do one more for

6    illustrative purposes, Page 2, Lines 46 through 52

7    are from Home Depot reflecting purchases of items

8    made by -- who made -- what source made those

9    purchases or what particular source used those

10   purchases?

11   A    Ahmed Mohamed made those purchases and he used

12   his USF Credit Union checking account with the debit

13   card getting in 8319.

14   Q    Do you have one of those records that verifies

15   that bank account there in front of you?

16   A    Yes, sir, it's 40 A.

17         MR. HOFFER:  If I can have a moment, Your Honor?

18         THE COURT:  You may.

19          (Pause.)

20         MR. HOFFER:  Thank you.  I have no further

21   questions of this witness at this point.

22         THE COURT:  Thank you, Mr. Hoffer.

23         Ms. Dyer, you are recognized for your

24   cross-examination.

25         MS. DYER:  Thank you, Your Honor.

1                    CROSS-EXAMINATION

2    BY MS. DYER:

3    Q    Good morning, ma'am.

4    A    Good morning.

5    Q    In your efforts to compile Government's Exhibit

6    43, you testified that you were given certain credit

7    card, debit card, gift card numbers in order to

8    compile that information, correct?

9    A    Yes.

10   Q    Okay.  And you went out and found out all of the

11   purchases related to those numbers, correct?

12   A    Related to those bank numbers?

13   Q    Yes, ma'am.

14   A    Well, I looked at the bank statements, yes.

15   Q    Okay.  So by looking at that you could determine

16   all purchases made by any of those accounts, correct?

17   A    Correct.

18   Q    Were you asked to analyze any purchases that

19   were made at other locations besides Wal-mart and

20   Home Depot?

21   A    No, ma'am.

22   Q    You testified just now concerning items on Page

23   2 of Government 43, Lines 46 through 52.  Do you

24   remember that?

25   A    Yes.

1    Q    And you testified that a Mr. Mohamed made those

2    purchases, correct?

3    A    Correct.

4    Q    Using a debit card 8319, correct?

5    A    Correct.

6    Q    And you testified that part of your

7    responsibility was to gather information and then

8    confirm that information, correct?

9    A    Correct.

10   Q    So did you look at the video surveillance from

11   the Home Depot on the day and time of those purchases

12   to confirm it was Mr. Mohamed?

13   A    I looked at some of the videos.  I don't recall

14   looking at the Home Depot one.

15   Q    Okay.  But you know that they were available for

16   you to look at?

17   A    They were available.

18   Q    So when you say that Mr. Mohamed made those

19   purchases, it wasn't confirmed?

20   A    Well, it was -- it was confirmed through his

21   debit card transaction, you mean?

22   Q    No.  That it was actually him using the debit

23   card?

24   A    I didn't confirm it.

25   Q    Do you know if it was confirmed?

1   A   Yes.

2   Q   It was him?

3   A   Yes.

4   Q   On the items -- let me take a step back.  You

5   said you did not view any Home Depot surveillance.

6   Did you view some Wal-mart surveillance?

7   A   Yes.

8   Q   Did you view Wal-mart surveillance of some of

9   Mr. Mohamed's purchases?

10  A   Yes.

11  Q   And you were able to confirm that it was in fact

12  him making those purchases?

13  A   Correct.

14  Q   And you were also able to confirm that Mr.

15  Megahed was not in those surveillance videos,

16  correct?

17  A   He was in a couple of the videos.

18  Q   He was in a couple of the videos?

19  A   Yes.

20  Q   Do you remember which ones?

21  A   He was in the video on 08/04 where -- I'm

22  looking for it on here.  On 08/04, at 1:08 in the

23  morning, at the Tampa store when Mr. Mohamed

24  purchased cashews.

25  Q   Is that the only time?

1    A    I remember seeing one or two other videos.  To

2    be specific on what purchases and dates and times, I

3    cannot recall that.

4    Q    That's fine.  Thank you.  Now, through your

5    analysis in all of these transactions -- and there

6    were numerous transactions, correct?

7    A    Correct.

8    Q    I believe Government's 43 is 16 pages, but you

9    testified Page 16 just shows the store locations

10   based on store number?

11   A    For the most part.  I believe there's a few

12   transactions.  There's four transactions on there.

13   But for the most part the majority of the page is a

14   legend of the stores.

15   Q    So there is over 15 pages worth of transactions?

16   A    Correct.

17   Q    Dating from August 4th, 2007, back to June 14th,

18   2006?

19   A    Correct.

20   Q    And you analyzed these thoroughly?

21   A    Yes.

22   Q    And that analysis revealed that -- let me ask

23   you this:  Are you aware of what purchases are

24   pertinent to this case?  What items being purchased

25   are relevant to this case?

1    A    Well, not being an expert in the issues at hand,

2    I would say no.  I did take steps to verify that

3    anything that was pertinent was highlighted through

4    the purchases.

5    Q    So someone told you that certain specific items

6    were pertinent to this case?

7    A    And what to look for.

8    Q    And when you analyzed the information, you were

9    able to confirm, were you not, that when those items

10   were purchased, the items that Mr. Mohamed purchased,

11   Mr. Megahed's records did not show any purchases from

12   that same store at that same time?

13   A    You know, I would have to -- I would really have

14   to look at the spreadsheet before I could answer yes

15   or no on that.

16   Q    How long would that take?

17   A    Maybe five minutes.

18   Q    You were never asked to do that?

19   A    I'm sure that that did come up back in the

20   investigation.  Whether it became pertinent to the

21   case, I think I would have made a note of.  But I'm

22   sure that they were together at least one or two

23   times.

24   Q    And would those have been on August 4th, 2007?

25   A    One of those for sure was.  I mean, the

1    transactions -- for sure they were together that day.

2    Other than that they were together on one or two

3    occasions, but as far as specifics, I can't really

4    recall which days they were.

5        MS. DYER:  Can I have a moment while she looks,

6    Your Honor?

7        THE COURT:  Well, Ms. Dyer, your question is did

8    she make that analysis and you can -- we don't need

9    to delay that while she conducts in-house -- I mean,

10   contemporaneous analysis.  Anyone can do this

11   counting.  The item is in evidence and it either has

12   contemporaneous times on it or it does not.

13       MS. DYER:  Yes, Your Honor.  And I was done.  I

14   just wanted to make sure that I didn't miss anything.

15       THE COURT:  Okay.

16        (Pause.)

17       MS. DYER:  Nothing else, Your Honor.  Thank you.

18       THE COURT:  Thank you, Ms. Dyer.  Ms. Dyer, did

19   I misunderstand your request?  If I did, you can

20   correct me.  I thought you were asking to wait while

21   she did the correlation, which would take several

22   minutes.

23       MS. DYER:  What I said was taken appropriately.

24   It's not what I meant.  I just meant could I step

25   aside.

1          THE COURT:  I see.  Well, if I misunderstood, my

2     apologies.

3          MS. DYER:  Thank you.

4          THE COURT:  Redirect examination from the United

5     States, Mr. Hoffer?

6          MR. HOFFER:  Just one or two, Your Honor.

7                        REDIRECT EXAMINATION

8     BY MR. HOFFER:

9     Q    Ms. Allen, so what you're saying is -- let me

10    ask you so I can make sure of this.

11         If we could have a lights for the second?

12         THE COURT:  Sounds a little bit leading so far,

13    Mr. Hoffer.

14    BY MR. HOFFER:

15    Q    With respect to the transaction, you said that

16    you recall seeing surveillance tapes in which the

17    defendant and Mr. Mohamed as you knew them were seen

18    together.  You mentioned one on August 4th.  Is that

19    reflected here in this first page of Government's 43?

20    A    Yes, sir.  It's Line 30.

21    Q    Line 30.  From your legend and from the

22    information, can tell us the location of the store

23    number and where that store is?

24    A    It's Store Number 2627, and it's located at 2701

25    East Fletcher Avenue in Tampa.

1    Q    That's part of the Middle District of Florida?

2    A    Yes, sir.

3    Q    Do you recall -- you said you remember, in

4    answer to Ms. Dyer's questions maybe, at least one or

5    two times that you saw surveillance tape where they

6    were together?

7    A    Yes.

8    Q    Do you recall -- of the almost 526 lines of

9    entries of data that's in this Exhibit 43, do you

10   recall what percentage of these transactions would

11   you say did you look at surveillance tape on?  Do you

12   have any recollection?

13   A    A very small percentage.  The videotapes were

14   not available at most stores.

15   Q    For example, if it refreshes your recollection,

16   let me ask you, Page 15 of 16, the next to the last

17   page, anything on there, Line 519, for example, a

18   transaction on that date -- do you recall looking at

19   that particular transaction or tape of that?

20   A    No.  That videotape was not available.  The

21   stores tape over their videotapes.

22   Q    So what you would have seen would have been more

23   recent vintage tape?

24   A    Yes.  I mean, I can narrow it down.

25   Q    Okay.  If you do know or have some information

1  on that?

2  A    I can narrow it down to the videotapes that I

3  saw were -- I saw snapshots from Store Number 697,

4  which is the Ocala store.  And any other tapes that I

5  saw were from Store 2627, and that's because they

6  were changing their video system into a new format.

7  During the transition time, they still had the old

8  tapes that overlapped some of this period.  It

9  wouldn't have gone back far, maybe 60 days, 30 or 60

10  days.

11  Q    So only from those two stores on certain days.

12  Do you recall -- August 4th, the transactions of that

13  date, did you see the surveillance camera videos from

14  that specific date?

15  A    From August 4th, I saw the ones from -- the one

16  from the Tampa store and the one -- I saw snapshots

17  from the Ocala store.

18  Q    That's Store 697?

19  A    Yes, sir.

20  Q    And that's reflected here on Page 1?

21  A    Yes, sir.

22  Q    And what transactions occurred on that date

23  according to your list that you might have seen?

24  A    The transactions that occurred were the purchase

25  made -- the purchases made at 3:42 a.m., the purchase

1    made at 3:18, and 3:17 a.m.  These were not the

2    transactions that I saw the videotape of.

3    Q    You did not see those?

4    A    No.  I saw a tape of Mr. Megahed in the store.

5    Q    I'm sorry?

6    A    But he was not making a purchase.

7    Q    Okay.  But these transactions that are listed

8    here in Lines 23 I guess through 29 in the Ocala

9    store -- that's the Ocala store, correct?

10   A    Yes.

11   Q    You did not see those surveillance tapes?

12   A    I saw pictures of him in the store, but he was

13   not actually making a purchase in the pictures that I

14   saw.

15   Q    Was he alone or with anybody else?

16   A    He was alone.

17        MR. HOFFER:  Thank you, Your Honor.  I have no

18   further questions of this witness.

19        THE COURT:  Thank you, Mr. Hoffer.

20        Is there any additional questioning from the

21   defense?

22        MS. DYER:  No, Your Honor.

23        THE COURT:  In that case, you may step down and

24   you're excused with our thanks.

25        THE WITNESS:  Thank you.

1      (End of excerpt of proceedings.)

2

3                    C E R T I F I C A T E

4      I, Kerry Mercade, certify that the foregoing is

5   a correct transcript from the record of proceedings

6   in the above-entitled matter.

7                                S/Kerry Mercade

8                                Kerry Mercade
                                 Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25